UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.   04 CV 10746 JLT

IVAN SANTIAGO,
      Plaintiff

v.

WILLIAM J. FEENEY, MARCUS
EDDINGS, and the CITY OF BOSTON,
      Defendants

**DEFENDANT MARCUS EDDINGS AND DEFENDANT WILLIAM FEENEY'S**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Defendants Marcus Eddings ("Defendant Eddings") and William Feeney

("Defendant Feeney") incorporate by reference the facts set forth in the Defendants'

Local Rule 56.1 Statement of Facts.  Plaintiff, Ivan Santiago ("Plaintiff") filed suit

against Defendants Eddings, Feeney, and the City of Boston ("City") in April 2004.  The

Plaintiff alleges that on March 20, 2003, Defendant Eddings, at the direction of

Defendant Feeney, conducted a strip search and a body cavity search of his person.  (Ex.

A, at ¶¶14-16).

In Count I of his Complaint, the Plaintiff alleges that by conducting a strip search

and a body cavity search, Defendants Eddings and Feeney deprived him of his right to be

free from unreasonable searches and seizures in violation of 42 U.S.C. §1983 and his

Fourth and Fourteenth Amendment rights as guaranteed by the United States

Constitution.  (Ex. A, at  ¶27).  Count II of the Plaintiff's Complaint alleges that by

conducting a strip search and a body cavity search, Defendants Eddings and Feeney

violated the Plaintiff's civil rights under M.G.L. c.12, §11I, by threats, intimidation and coercion.  (Ex. A, at ¶29).  Count III of the Plaintiff's Complaint alleges only municipal claims against the Defendant, City of Boston.  (Ex. A, at ¶30-33).

Defendants Eddings and Feeney move for partial summary judgment as to Counts I and II of the Plaintiff's Complaint insofar as those Counts allege that the Plaintiff's strip search was a violation of his constitutional rights.  Defendants Eddings and Feeney deny that a body cavity search took place and thus there remains an issue of material fact as to that allegation.

## ARGUMENT

### I.    THE APPLICABLE STANDARDS.

#### A.    SUMMARY JUDGMENT.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).  A party seeking summary judgment must make a preliminary showing that no genuine issue of material fact exists.  Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995), cert. denied, 515 U.S. 1103 (1995).  Once the movant has made such a showing, the nonmovant must point to specific facts demonstrating that there is, indeed, a trialworthy issue.  Id.

A fact is "material" if it has the "potential to affect the outcome of the suit under the applicable law," Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000), and a "genuine" issue is one supported by such evidence that "a reasonable jury, drawing favorable inferences, could resolve it in favor of the nonmoving

party." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999)

(quoting Smith v. F.W. Morse & Co., 76 F.3d 413, 428 (1st Cir. 1996)). "Conclusory

allegations, improbable inferences, and unsupported speculation," are insufficient to

establish a genuine dispute of fact. Medina-Munoz v. R.J. Reynolds Tobacco Co., 896

F.2d 5, 8 (1st Cir. 1990).

> **B.** **SUPERVISORY LIABILTY.**

For purposes of Section 1983, supervisors sometimes may be held accountable for

their subordinates' misdeeds. See Camilo-Robles v. Zapata, 175 F.3d 41, 43 (1st Cir.

1999). Supervisory liability under § 1983 "cannot be predicated on a respondeat theory,

but only on the basis of the supervisor's own acts or omissions." Seekamp v. Michaud,

109 F.3d 802, 808 (1st Cir. 1997). There is supervisory liability only if (1) there is

subordinate liability, and (2) the supervisor's action or inaction was "affirmatively linked"

to the constitutional violation caused by the subordinate. Id. (citing Lipsett v. University

of Puerto Rico, 864 F.2d 881, 902 (1st Cir. 1988)). That affirmative link must amount to

"supervisory encouragement, condonation or acquiescence, or gross negligence

amounting to deliberate indifference."[1] Lipsett, 864 F.2d at 902.

**II.** **PLAINTIFF'S CLAIM THAT HIS STRIP SEARCH WAS A VIOLATION OF 42 U.S.C. §1983 SHOULD BE DISMISSED AS A MATTER OF LAW BECAUSE HIS FEDERAL CONSTITUTIONAL RIGHTS WERE NOT VIOLATED AND, REGARDLESS, DEFENDANTS EDDINGS AND FEENEY ARE ENTITLED TO QUALIFIED IMMUNITY.**

> **A.** **THE PLAINTIFF'S FEDERAL CONSTITUTIONAL RIGHTS WERE NOT VIOLATED.**

---

[1] Defendant Feeney testified in his deposition that he told Officer Eddings to take the Plaintiff into the bathroom and search him, that he thought Officer Eddings was going to strip search him, and that he believed there was probable cause to conduct a strip search. (Ex.C, at 34:21 – 35:1-7; 37:1-12). For purposes of this Motion, therefore, Defendant Feeney concedes that there exists a sufficient affirmative link through his conduct or authorization to establish supervisory liability. Thus, liability of Defendant Feeney is herein considered in tandem with Defendant Eddings.

A claim under 42 U.S.C. § 1983 imposes liability upon individuals who, acting under color of state law, deprive a person of federally guaranteed rights. Camilo-Robles v. Hoyos, 151 F.3d 1, 5 (1st Cir. 1998). There is no dispute that, at all times relevant to this action, Defendants Eddings and Feeney were acting under color of state law. The federally guaranteed right at issue is the Plaintiff's right to be free from unreasonable search and seizure. The Plaintiff's constitutional rights were not violated, since the search of the Plaintiff was pursuant to a valid warrant, and the strip search was based on reasonable suspicion.[2]

### 1.    Search of the Plaintiff was pursuant to a valid warrant.

The Fourth Amendment ensures that citizens are "secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. Reasonableness requires probable cause and a warrant unless one of the exceptions to the warrant requirement applies, a principle drawn from the Fourth Amendment's prohibition against the issuance of warrants without "probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; see also Katz v. United States, 389 U.S. 347, 357 (1967). The magistrate issuing the search warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit… there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and

---

[2] For clarity's sake, the Defendants separate two separate but interrelated issues: (1) whether searching the Plaintiff was constitutionally permissible; and (2) whether strip searching the Plaintiff was constitutionally permissible.

depends on the totality of the circumstances." Maryland v. Pringle, 540 U.S. 366, 371 (2003).

In addition to the requirement that a search warrant be supported by probable cause, the warrant must particularly describe the place where the search will occur and the persons or things to be seized.  See Groh v. Ramirez, 540 U.S. 551, 557 (2004). Thus, the particularity requirement of the Fourth Amendment is directed at the warrant as opposed to the supporting affidavit.  Id.

The warrant in this case commanded officers to search for specifically named property associated with the possession and sale of narcotics, and described Apartment #5 at 58 Cheney Street.  (Ex. F, at 2).  The warrant also commanded that officers search "any person present who may be found to have such property in his or her possession or under his or her control or to whom such property may have been delivered."  (Ex. F, at 2).   The search of the Plaintiff was pursuant to this so-called "any person present" provision.

Warrants that provide for the search of "any person present" raise a difficult constitutional issue for the courts.  The Supreme Court has acknowledged the issue, but not resolved it.  Ybarra v. Illinois, 444 U.S. 85, 92 n.4 (1979).  Officers in Ybarra obtained a warrant to search the premises at a public tavern, as well as the bartender, for narcotics.  A state statute allowed officers who were executing the warrant "to search any person in the place . . . (a) [t]o protect himself . . . or (b) to prevent the disposal or concealment of . . . things particularly described in the warrant." 444 U.S. at 87 n.1. There was no specific information giving officers probable cause to believe that anyone in the tavern, other than the bartender, was involved in the distribution of drugs.  Id. at

90.  Ybarra was nevertheless patted down and heroin was recovered from his pocket.  Id.
at 89.

The Supreme Court held that the search of Ybarra was unconstitutional under the
Fourth Amendment, since there was no probable cause particularized with respect to him
and that his "mere propinquity to others independently suspected of criminal activity did
not, without more," supply the missing probable cause.  Id. at 91.  Although the Court
implied that the warrant issued for the tavern did not supply a basis for searching
individuals in the bar, the Court recognized the possibility that a warrant could, under the
right circumstances, provide that support: "[W]e need not consider situations where the
warrant itself authorizes the search of unnamed persons in a place and is supported by
probable cause to believe that persons who will be in the place at the time of the search
will be in possession of illegal drugs."  Id. at 92, n.4.

The First Circuit has not ruled on the question of the validity of APP warrants.[3]
Quiles v. Kilson, 337 F. Supp. 2d 224, 229 (2004).  In Quiles, after conducting controlled
buys from an apartment using a confidential informant, police obtained a search warrant.
Id. at 227.  The warrant provided that the police were to search the two individuals who
had sold drugs to the informant, as well as "any person present who may be found to have
such property in his or her possession or under his or her control or to whom such
property may have been delivered."  Id.  When the warrant was executed at the
apartment, one of the individuals who sold the drugs was present, as well as another adult

---

[3] In Owens v. Lott, 372 F.3d 267, 280 (4th Cir. 2004), the Fourth Circuit recently took stock of decisions from other jurisdictions considering the validity of "all persons" warrants -- mostly state decisions –and found that the vast majority of courts concluded that such a warrant does not violate the Fourth Amendment per se.  Beyond that broad conclusion, however, courts impose different requirements for what is necessary to sustain the validity of such a warrant.  Id.

and three minors.  Id. at 227-228.  The police strip searched all of them.[4]  Id. at 228.

Neither the search warrant nor the application for the search warrant alleged that children

were involved in any illegal activity.  Id. at 227.

　　　　As a threshold matter, apart from the issue of the strip searches, the Court held

that the search of the four individuals in the apartment from the beginning did not violate

their Fourth Amendment rights, since the police had a valid "all persons" warrant, which

allowed them to search "any person present" in the apartment.  Id. at 229.  The Court

rejected the magistrate judge's finding that the warrant was invalid on the basis that many

jurisdictions have held such warrants unconstitutional.  Id.

　　　　This case is analogous to Quiles.  Based on three successful controlled purchases

of crack cocaine by a confidential informant from Rolando Lugo inside of 58 Cheney

Street, Apt. #5, and the heavy foot traffic to and from 58 Cheney Street consistent with

drug activity, Officer Quinn submitted an *Affidavit in Support of Application For Search

Warrant* ("Affidavit") stating that he had probable cause to believe that Rolando Lugo

was keeping and selling crack cocaine at that address.  (Ex. E, at 4).  In his Affidavit,

Officer Quinn also stated that, due to the unpredictable nature of persons coming to the

apartment to purchase crack cocaine, he was also requesting permission to search any

person present at the execution of the warrant.   (Ex. E, at 4).

　　　　On March 14, 2003, first assistant clerk magistrate Patricia F. McDermott signed

Officer Quinn's Affidavit and issued a search warrant.  (Ex. F, at 1-2).  The Search

Warrant was pre-approved by Assistant District Attorney Michael Cornelius.  (Ex. G, at

1).  In addition to commanding officers to search for specifically described property, the

---

[4] Also strip searched were two minors who had been outside when the police arrived and two other minors who had been in the stairway as police entered the building.  Id. at 227-228.  The Court considered the constitutionality of their searches separately.

warrant also commanded officers "to search any person present who may be found to have such property in his or her possession or under his or her control or to whom such property may have been delivered," precisely the language in the <u>Quiles</u> warrant. (Ex. F, at 2). When the warrant was executed at 58 Cheney Street, Apt. #5, the target of the search, Rolando Lugo, was present. (Ex. G, at 1). Other persons in the apartment were Jacqueline Lugo, her son Gabriel, and Plaintiff Ivan Santiago. (Ex. G, at 1-2). As in <u>Quiles</u>, the search of the Plaintiff did not violate his Fourth Amendment rights, since the police had a valid "all persons" warrant, which allowed them to search "any person present" in the apartment. <u>Quiles</u>, 337 F. Supp. 2d at 229.

## 2. The strip search of the Plaintiff was based on reasonable suspicion.

A second issue is whether the strip search of the Plaintiff violated his constitutional rights. In <u>Swain v. Spinney</u>, 117 F.3d 1, 5 (1st Cir. 1997), the Court held that a strip and visual body cavity search is justified and permitted by "reasonable suspicion" that the person is concealing drugs and/or weapons on their person.[5] There was reasonable suspicion in this case that the Plaintiff was concealing drugs on his person.

Using a confidential informant, there were three successful purchases of crack cocaine from inside of 58 Cheney Street, Apt. #5. (Ex. E, at 1-4). During the three purchases, officers observed heavy foot traffic to and from 58 Cheney Street consistent

---

[5] In <u>Blackburn v. Snow</u>, 771 F.2d 556, 561 n.3 (1st Cir. 1985), the First Circuit recognized that "strip search" is an "umbrella term" covering several increasingly intrusive procedures. In addition to the general term, defined as an inspection of a naked individual without any scrutiny of the subject's body cavities, a "visual body cavity search" extends to visual inspection of the anal and genital areas, and a "manual body cavity search" includes some degree of touching or probing of body cavities. <u>Id.</u>; <u>see also</u> <u>Savard v. Rhode Island</u>, 338 F.3d 23, 25 (1st Cir. 2003) (separately defining "visual body cavity searches" as "inspections of the anal and genital areas.") For simplicity's sake this Memorandum utilizes the umbrella term "strip search."

with drug activity.  Id. at 3.  Prior to executing the search warrant, management of the

building informed officers that no males were listed as tenants of 58 Cheney Street, Apt.

#5.  (Ex. E, at 3).  As officers were approaching the rear of the building to execute the

search warrant, a female was heard shouting from the target apartment "Gabriel and Ivan,

they're raiding, they're raiding!!!"[6]  (Ex. G, at 1; Ex. B, at 30:2-4; Ex. C, at 17:19-24).

Despite knocking and announcing their presence, there was no response from inside the

apartment.  (Ex. G, at 1).  Fearing that evidence was being destroyed, the Officers utilized

a key they had obtained and opened the door.  Id.  Once inside the apartment, the target

of the search, Rolando Lugo, stated that there were some .380 rounds in the corner of the

bedroom, drug paraphernalia in the drawer of the bedroom, that he had about $400-$500

on him, and that he also had some "drugs in his ass."  (Ex. G, at 2).  After officers

uncuffed Mr. Lugo, he retrieved from his buttocks area a plastic bag containing six bags

of crack cocaine.  (Ex. G, at 2; Ex.C, at 8-19).  When Mr. Lugo was questioned further,

he stated that there was crack cocaine in a stuffed animal located on the dresser.  (Ex. G,

at 2-3).  A medium bag of cocaine was recovered from the stuffed animal.  Id. at 3.

   "Reasonable suspicion" is something stronger than a mere "hunch," Terry v. Ohio,

392 U.S. 1, 22 (1967), but something weaker than probable cause.  See Alabama v.

White, 496 U.S. 325, 330 (1990).  At a minimum, the reasonable suspicion

standard requires that the decision to search be based on articulable factual information

bearing at least some indicia of reliability.  See, e.g., Alabama v. White, 496 U.S. 325,

330 (1990); United States v. Sokolow, 490 U.S. 1 (1989).  Based on the totality of the

circumstances, Defendants Eddings and Feeney had sufficient reasonable suspicion that

---

[6] As entry was being made into the building, Defendant Feeney testified that he was told by other officers "they're yelling we're coming, the police are coming, 5-0 is coming."  (Ex.C, at 17:19-24).

the Plaintiff was concealing drugs on his person.  Thus, the strip search of the Plaintiff

was justified and not a violation of his federal constitutional rights.

> **B.    DEFENDANTS EDDINGS AND FEENEY ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE THEIR CONDUCT WAS OBJECTIVELY REASONABLE IN LIGHT OF CLEARLY ESTABLISHED LAW.**

Even if this Court were to find that the Plaintiff's federal constitutional rights

were violated, his claims must be analyzed in light of the qualified immunity enjoyed by

police officers.  Pursuant to the doctrine of qualified immunity, police are normally

shielded from liability for civil damages insofar as their conduct did not violate clearly

established rights of which a reasonable person would have known.  Ringuette v. City of

Fall River, 146 F.3d 1, 5 (1st Cir. 1998)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818

(1982)).

A sequential analysis is used to determine whether a defendant violated clearly

established rights of which a reasonable person would have known. See Saucier v. Katz,

533 U.S. 194, 201-06 (2001).  The First Circuit has construed that analysis to consist of

three inquiries: "(i) whether the plaintiff's allegations, if true, establish a constitutional

violation; (ii) whether the constitutional right at issue was clearly established at the time

of the putative violation; and (iii) whether a reasonable officer, situated similarly to the

defendant, would have understood the challenged act or omission to contravene the

discerned constitutional right."  Limone v. Condon, 372 F.3d 39, 44 (1st Cir. 2004).

Qualified immunity extends "so broadly that all but the plainly incompetent or those who

knowingly violate the law'" enjoy its protection.  Hegarty v. Somerset County, 53 F.3d

1367, 1373 (1st Cir. 1995)(quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

The ultimate question of whether a defendant is entitled, on a given set of facts, to the protection of qualified immunity is a question of law for a court to decide.  See Jarrett, 309 F.3d at 61 (quoting Starlight Sugar, Inc. v. Soto, 253 F.3d 137, 141 (1st Cir. 2002)).  The U.S. Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  Saucier, 533 U.S. at 201 (2001) (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)).  The privilege is an immunity from suit rather than a mere defense to liability and, like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.  Saucier, 533 U.S. at 200-201 (quoting Mitchell, 472 U.S. at 526).

### 1.    **Search of the Plaintiff.**

As to the threshold matter of searching individuals present in the apartment, the Defendants' conduct was objectionably reasonable in light of clearly established law. Objective legal reasonableness is the "touchstone" of qualified immunity.  See Anderson v. Creighton, 483 U.S. 635, 639 (1987).  Could an objectively reasonable official, situated similarly to the defendant, have believed that his conduct did not violate the plaintiff's constitutional rights, in light of clearly established law and the information possessed by the defendant at the time of the allegedly wrongful conduct?  See Hegarty v. Somerset County, 53 F.3d 1367, 1373 (1st Cir.), cert. denied, 116 S. Ct. 675 (1995); Singer v. Maine, 49 F.3d 837, 844 (1st Cir. 1995).

An objectively reasonable official, with the information in the Defendants' possession and similarly situated, could have believed that searching the Plaintiff was not a violation of a clearly established right.  There was a facially valid warrant specifically authorizing the search of any person present at 58 Cheney Street, Apt. #5 "who may be

found to have such property in his or her possession or under his or her control or to whom such property may have been delivered." (Ex. F, at 2).   The search warrant was signed by a first assistant clerk magistrate.  (Ex. F, at 2).  The search warrant was pre-approved by an Assistant District Attorney.  (Ex. G, at 1).

For a right to have been clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.  Id.

The Supreme Court has not addressed the circumstances, if any, under which an "all persons" provision in a search warrant is constitutional, nor has this Court done so. See, e.g. Ybarra, 444 U.S. at 92 n.4; Quiles, 337 F. Supp. 2d  at 229.  Indeed, courts that have considered the validity of such warrants impose different requirements for what is necessary to sustain their validity.[7]  The approach used in State v. De Simone, 60 N.J. 319, 288 A.2d 849, 851 (N.J. 1972), for example, is to determine whether "there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant" in the criminal conduct occurring there.  Other jurisdictions "permit such warrants if the facts known to the issuing judge justify a belief that the premises are confined to ongoing illegal activity and that every person within the orbit of the search possesses the items sought by the warrant." State v. Horn, 15 Kan. App. 2d 365, 808 P.2d 438, 439 (Kan. Ct. App. 1991).  Another approach is to find the warrant valid if

---

[7] The circumstances in Massachusetts in which a search warrant aimed principally at the premises may also be held validly to include the search of any person present is discussed in Section III.A.1 *infra.*

there is a reasonable probability that persons involved in the criminal activity will be present during the execution of the warrant.  See State v. Hayes, 196 Wis. 2d 753, 540 N.W.2d 1, 4 (Wis. Ct. App. 1995).  Moreover, these decisions provide no clear view, let alone a consensus, regarding what factors are most significant in deciding whether sufficient probable cause exists to support the search of "all persons" found in a private residence being searched for drugs.  Owens, 372 F.3d at 280 and cases cited.

Thus, a right to be free from a search pursuant to an "all persons" warrant was not clearly established such that a reasonable officer would have understood that searching the Plaintiff encroached upon that right.  The Defendants are therefore entitled to qualified immunity as to the search of the Plaintiff.[8]

### 2.    Strip search of the Plaintiff.

As to the strip search of the Plaintiff, the Defendants do not dispute that the standard of reasonable suspicion was clearly established at the time Plaintiff was searched.  The question, therefore, is whether the Defendants' actions were objectively reasonable.  Vargas-Badillo v. Diaz-Torres, 114 F.3d 3, 5 (D. Puerto Rico 1997).  The search of the Plaintiff was objectively reasonable and justified, and was within the scope of the warrant.

The warrant commanded the search of *any person present* who *may* be found to have any of the items specified in the warrant in his or her possession or under his or her control, or to whom such property may have been delivered.  (Ex. F, at 2).  An objectively reasonable official, with the information in the Defendants' possession and similarly situated, could have believed that there was reasonable suspicion that the

---

[8] For purposes of this Memorandum, the term "Defendants" refers to Defendants Eddings and Feeney.

Plaintiff had narcotics in his possession or under his control, or such property "may have been delivered" to him.

As discussed in Section II.A.2 *supra*, there were three successful purchases of crack cocaine from inside of 58 Cheney Street, Apt. #5. (Ex. E, at 1-4). Heavy foot traffic to and from 58 Cheney Street, consistent with drug activity, was observed. Id. at 3. Officers had been informed that no males were listed as tenants of 58 Cheney Street, Apt. #5. (Ex. E, at 3). As officers were executing the warrant, a female from the apartment was heard shouting "Gabriel and Ivan, they're raiding, they're raiding!!!" (Ex. G, at 1; Ex. B, at 30:2-4; Ex. C, at 17:19-24). There was no response from inside the apartment when police knocked and announced their presence, prompting officers to fear that evidence was being destroyed. (Ex. G, at 1). Once inside the apartment, the target of the search, Mr. Lugo, stated that there was ammunition and drug paraphernalia in the apartment, and that he also had some "drugs in his ass." (Ex. G, at 2). Mr. Lugo retrieved from his buttocks area a plastic bag containing six bags of crack cocaine. (Ex. G, at 2; Ex.C, at 8-19). A medium bag of cocaine was recovered from a stuffed animal. Id. at 3. All of these events occurred prior to the strip search of the Plaintiff.

It must have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. Further, "'if there is a legitimate question as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity,'" Singer v. Maine, 49 F.3d 837, 845 (1st Cir. 1995)(internal quotations omitted). The law provides immunity for reasonable errors because "officials should not err always on the side of caution" out of a fear of civil suit. See Davis v. Scherer, 468 U.S. 183, 196 (1984).

In this case, reasonable suspicion reasonably exists on the facts. Since the Plaintiff cannot show that it is *absolutely* clear that *no* reasonable suspicion existed, qualified immunity must not be denied. See Sheehy v. Town of Plymouth, 191 F.3d 15, 19 (1st Cir. 1999) (quoting Floyd v. Farrell, 765 F.2d 1, 5 (1st Cir. 1985)); Topp v. Wolkowski, 994 F.2d 45, 48 (1st Cir. 1997) (quoting Floyd 765 F.2d at 5); Rose v. Town of Concord, 971 F. Supp. 47, 50 (D. Mass. 1997) (citing Rivera, 979 F.2d at 263 (quoting Ricci v. Urso, 974 F.2d 5, 7 (1st Cir. 1991))). "This type of discretionary judgment call, made routinely by peace officers, must be protected from the chilling effect of personal liability." Vargas-Badillo v. Diaz-Torres, 114 F.3d 3, 7 (D. Puerto Rico 1997) (granting qualified immunity in case where evidence for arrest was "not very strong").

Defendants Eddings and Feeney are therefore entitled to qualified immunity and summary judgment in their favor.[9]

## III.    PLAINTIFF'S CLAIM THAT HIS STRIP SEARCH WAS A VIOLATION OF M.G.L. C.12, §11I SHOULD BE DISMISSED AS A MATTER OF LAW BECAUSE HIS STATE CONSTITUTIONAL RIGHTS WERE NOT VIOLATED AND, REGARDLESS, DEFENDANTS EDDINGS AND FEENEY ARE ENTITLED TO QUALIFIED IMMUNITY.

### A.    THE PLAINTIFF'S STATE CONSTITUTIONAL RIGHTS WERE NOT VIOLATED.

Count III of Plaintiff's complaint alleges violations of the Massachusetts Civil Rights Act ("MCRA") against Defendants Eddings and Feeney. The Massachusetts Civil Rights Act provides for a private right of action for interference with individual rights "secured by the [C]onstitution or laws of the United States, or of rights secured by the

---

[9]  The Defendants maintain that the search and strip search of the Plaintiff was not in violation of Boston Police Department Rules and Procedures. Regardless, even assuming that there was a violation of a police regulation, that is irrelevant for purposes of determining whether there was a constitutional violation sufficient to establish liability under 42 U.S.C. § 1983. See Groh v. Ramirez, 540 U.S. 551, 564 (2004)("[w]e do not suggest that an official is deprived of qualified immunity whenever he violates an internal guideline").

constitution or laws of the Commonwealth . . . as described in section 11H."  The Massachusetts Declaration of Rights, article 14, gives every person the right to be free from "unreasonable searches."  The Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H, 11I, provides a private right of action for persons who are deprived of rights protected by either federal or state law.

In order to state a claim pursuant to the Massachusetts Civil Rights Statute, a plaintiff must also allege the deprivation of his rights by threats, intimidation or coercion.[10]  See Mass. Gen. L. ch. 12, § 11; Hathaway v. Stone, 687 F. Supp. 708, 711 (1988); Bell v. Mazza, 394 Mass. 176, 182 (1985) (noting that the state legislature explicitly limited the remedy provided by § 11I to situations where the derogation of rights occurs by threats, intimidation, or coercion).

### 1. Search of the Plaintiff was reasonable.

The Supreme Judicial Court has held that only in special circumstances will a search warrant aimed principally at the premises also be held validly to include the search of any person present.  See Commonwealth v. Baharoian, 25 Mass. App. Ct. 35, 38, 40, 514 N.E.2d 685 (1987)("Any person present language" in otherwise valid warrant did not empower the police to search persons in the store not named or described in the warrant where there was no "reasonable basis for anticipating that everyone present" was engaged in the illegal gaming operations).  The Supreme Judicial Court has held that only a "narrowly circumscribed range of searches," based upon "any person present" language, are consistent with the Fourth Amendment. Commonwealth v. Smith, 370 Mass. 335,

---

[10] Mindful that for purposes of the MCRA "[coercion involves] the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done," the Defendants concede that a strip search, if found to be a deprivation of Plaintiff's rights, would satisfy such a definition.  Planned Parenthood League v. Blake, 417 Mass. 467, 474 (1994).

342, cert. denied, 429 U.S. 944 (1976); see also Commonwealth v. Pellier, 362 Mass. 621, 625 n.3 (1972)(any persons present clause "lacks specificity and is of dubious meaning").

In Smith, the court upheld a search of the defendant pursuant to "any person present" language where the affidavit sufficiently established probable cause to believe that any person in the apartment was a participant in the illegal transactions (trafficking in heroin) occurring therein. 370 Mass. at 339. Using the guidelines set forth in People v. Nieves, 36 N.Y.2d 396, 404-405 (1975), Smith concluded that an application for this type of warrant must (a) "carefully delineate the character of the premises, for example, its location, size, the particular area to be searched, means of access, neighborhood, its public or private character and any other relevant fact"; and (b) "specifically describe the nature of the illegal activity . . . [alleged] at the location, the number and behavior of persons observed . . . during the times of day or night [for which] the warrant is sought," and "whether any person apparently unconnected with the illegal activity has been seen at the premises." 370 Mass. at 345. Further, "the warrant itself must limit the locus of the search to the area in which the criminal activity is believed to [occur] and, according to the circumstances, may also specify the time for the search." Id. at 345-346. It is also appropriate to consider the need for and purpose of this type of search, taking into account both the difficulty of providing a more specific description of the persons to be searched as well as the risk that an innocent person may be swept up in a dragnet and searched. Id. at 345.

In this case, the Affidavit in support of the search warrant, completed by Boston Police Officer Paul T. Quinn, stated that a confidential informant claimed to have

purchased crack cocaine on numerous occasions from 58 Cheney Street, Apt. #5.  (Ex. E,
at 1).  The Affidavit stated that officers were highly familiar with Cheney Street as an
active area for drug sales, and that they had executed numerous drug-related search
warrants on Cheney Street at various apartments over the previous several years.  (Ex. E,
at 1).  The Affidavit stated that the confidential informant made three controlled
purchases of crack cocaine from the apartment.  (Ex. E, at 1-4).  The Affidavit stated that
heavy foot traffic to and from 58 Cheney Street consistent with drug activity was
observed during surveillance.  (Ex. E, at 3).  The Affidavit indicated that the Informant
described the door to Apt. #5 as brown in color, with a number 5 clearly posted on it and
a "Jesus" sign underneath the peephole of the door.  (Ex. E, at 4).  The Affidavit also
stated that, due to the unpredictable nature of persons coming to the apartment to
purchase crack cocaine, permission was requested to search any person present at the
execution of the warrant.   (Ex. E, at 4).

    Pursuant to the Affidavit, there was a Search Warrant issued and signed by first
assistant clerk magistrate Patricia F. McDermott, which provided that officers were
"commanded… to search for the following property:  cocaine, a Class B Controlled
Substance and all implements used in the cutting, bagging, weighing and distribution of
Cocaine.  Any hooks, notes, papers of ledgers denoting drug transactions and any money
derived from drug transactions.  Any personal papers and/or effects showing occupancy
or control of 58 Cheney St., Apt. #5, Dorchester, MA including keys to this location."
(Ex. F, at 2).   The Search Warrant commanded officers to search for the described
property at: "[a]ll rooms, closets, storage areas located inside of 58 Cheney St., Apt. #5,
Dorchester, MA and all common areas the occupants of 58 Cheney St., Apt. #5 have

access to including the hallway and the basement.  58 Cheney St., Apt. #5 in Dorchester

is a large 4 story brown brick building with the #58 clearly posted above the outer entry

door.  Apt. #5 at 58 Cheney is on the 2nd floor.  The door to Apt. #5 is brown and the

number 5 clearly posted on the door.  The words 'I ask Jesus' are on the door to Apt. #5

[which is occupied by and/or in the possession of] Rolando Lugo, 02/18/81…. A W/H

male approx. 6'00", thin build."   (Ex. F, at 2).

The Affidavit and Warrant in this case satisfy the standards established in <u>Smith</u>,

and thus officers had a valid "any person present" warrant and the search of Plaintiff was

not unreasonable under Article 14.

### 2.    The strip search of the Plaintiff was based on probable cause.

The standard applicable to strip searches in Massachusetts was established in

<u>Commonwealth v. Thomas</u>, 429 Mass. 403 (1999).  In <u>Thomas</u>, the defendant had been

arrested for a narcotics violation in the immediate aftermath of an undercover police

officer's purchase of cocaine.  He was booked and then strip searched for contraband and

weapons.  As he was removing his clothing, he retrieved what appeared to be a bag of

crack cocaine from his buttocks. Police then conducted a visual body cavity search and

discovered more drugs.  <u>Id.</u> at 405.

On appeal, Thomas maintained that the strip search was unreasonable and, citing

<u>Rodriques v. Furtado</u>, 410 Mass. 878, 888 (1999), argued that nothing less than "a strong

showing of particularized need supported by a high degree of probable cause" would

justify either a strip or a visual body cavity search.  The Supreme Judicial Court

disagreed.  <u>Rodriques</u>, the court said, involved a manual body cavity search, something

far more intrusive than the kinds of searches Thomas experienced.  <u>Commonwealth v.</u>

Thomas, 429 Mass. at 408.  Nevertheless, the court said, strip searches and visual body cavity searches were far more seriously invasive than searches conducted by manually probing someone who was fully clothed.  Id. at 408-409 & n.5.  The court thus rejected decisions holding that such searches, like searches through outer garments, were permissible if officers had a reasonable suspicion to conduct them, and held that probable cause for such searches was necessary.  See, e.g., Swain, 117 F.3d at 5.

In this case, using a confidential informant, there were three successful purchases of crack cocaine from inside of 58 Cheney Street, Apt. #5.  (Ex. E, at 1-4).  During the three purchases, officers observed heavy foot traffic to and from 58 Cheney Street consistent with drug activity.  Id. at 3.  Prior to executing the search warrant, management of the building informed officers that no males were listed as tenants of 58 Cheney Street, Apt. #5.  (Ex. E, at 3).  As officers were approaching the rear of the building to execute the search warrant, a female was heard shouting from the target apartment "Gabriel and Ivan, they're raiding, they're raiding!!!"  (Ex. G, at 1; Ex. B, at 30:2-4; Ex. C, at 17:19-24).  Despite knocking and announcing their presence, there was no response from inside the apartment.  (Ex. G, at 1).  Fearing that evidence was being destroyed, the Officers utilized a key they had obtained and opened the door.  Id.  Once inside the apartment, the target of the search, Rolando Lugo, stated that there were some .380 rounds in the corner of the bedroom, drug paraphernalia in the drawer of the bedroom, that he had about $400-$500 on him, and that he also had some "drugs in his ass."  (Ex. G, at 2).  After officers uncuffed Mr. Lugo, he retrieved from his buttocks area a plastic bag containing six bags of crack cocaine.  (Ex. G, at 2; Ex.C, at 8-19).  When Mr. Lugo was questioned further, he stated that there was crack cocaine in a stuffed

animal located on the dresser.  (Ex. G, at 2-3).  A medium bag of cocaine was recovered from the stuffed animal.  Id. at 3.

The facts and circumstances within the Defendants' knowledge was enough to warrant a prudent person in believing that he would find contraband, or the fruits or instrumentalities of criminal activity, that he could not reasonably expect to discover without forcing the Plaintiff to discard all of his clothing.  See e.g., Commonwealth v. Santaliz, 413 Mass. 238, 241(1992), quoting Commonwealth v. Storey, 378 Mass. 312, 321 (1979), cert. denied, 446 U.S. 955 (1980).  Thus, the strip search of the Plaintiff was based on probable cause and not a violation of his state constitutional rights.

**B.  DEFENDANTS EDDINGS AND FEENEY ARE ENTITLED TO QUALIFIED IMMUNITY.**

The Supreme Judicial Court has stated that the MCRA and §1983 are parallel statutes, coextensive with each other.  See Batchelder v. Allied Stores Corp., 393 Mass. 819, 822-23 (1985); Canney v. Chelsea, 925 F. Supp. 58, 68 (1st Cir. 1996).  The same qualified immunity standard that applies under § 1983 has also been held to apply to claims under the MCRA.  See Durante v. Healy, 405 Mass. 43, 46 (1989).  Thus, even if this Court were to find that Defendants Eddings and Feeney violated the Plaintiff's state constitutional rights, they are entitled to qualified immunity because their conduct was objectively reasonable in light of clearly established law.

**a.  Search of the Plaintiff.**

Assuming this Court finds that the "any person present" warrant in this case was not valid, the dispositive question for purposes of qualified immunity is whether the warrant application was so lacking in indicia of probable cause as to render official belief in its existence unreasonable.  Rodriques, 410 Mass. at 885; see also Malley v. Briggs,

475 U.S. 335, 344-345 (1986); United States v. Leon, 468 U.S. 897, 922-923 (1984).

Again, qualified immunity extends "so broadly that all but the plainly incompetent or

those who knowingly violate the law'" enjoy its protection.  Hegarty v. Somerset County,

53 F.3d 1367, 1373 (1st Cir. 1995)(quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

Based on the facts discussed in Section III.A.1 *supra*, an objectively reasonable

official, situated similarly to the Defendants, could have believed that the warrant and the

application contained sufficient probable cause to search any person present, such that

their conduct did not violate the Plaintiff's constitutional rights, in light of clearly

established law and the information possessed by the Defendants at the time of the

allegedly wrongful conduct.  See, e.g. Hegarty, 53 F.3d at 1373.

Moreover, even if there was an error of constitutional dimension with regard to

the issuance of the "any person present" Warrant in this case, it was the first assistant

clerk magistrate who signed the Warrant and the Assistant District Attorney who pre-

approved it, not the Defendants, who made the mistake.  See, e.g. Mass. v. Sheppard, 468

U.S. 981, 990 (1984).  The officers in this case took every step that could reasonably be

expected of them.  The Defendants should hardly be required to disbelieve a clerk who

has advised them, by the action of signing the Warrant, that they were authorized to

conduct the search that was requested.  Id.  The Defendants' reliance on the warrant and

their actions were objectively reasonable, and they are therefore entitled to qualified

immunity and summary judgment should enter in their favor.

### b.    Strip Search of the Plaintiff.

"Probable cause is a relatively low threshold, defined as 'the facts and

circumstances within [an officer's] knowledge and of which [he] had reasonably

trustworthy information [and that] were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense.'" White v. Marblehead, 989 F. Supp. 345, 348 (D. Mass. 1997) (quoting Rivera, 979 F.2d at 263). When an arrest, for example, is challenged on the basis of lack of probable cause, the arrest is "deemed objectively reasonable unless there *clearly* was *no* probable cause at the time the arrest was made." Sheehy v. Town of Plymouth, 191 F.3d 15, 19 (1st Cir. 1999) (quoting Topp v. Wolkowski, 994 F.2d 45, 48 (1st Cir. 1993)) (emphasis added).

In this case, for all the reasons discussed in Section III.A.1 *supra,* an objectively reasonable official, with the information in the Defendants' possession and similarly situated, could have believed that contraband, or the fruits or instrumentalities of criminal activity, would be found on the Plaintiff, and that it could not reasonably be expected to discover such evidence without forcing the Plaintiff to discard all of his clothing. The Defendants' actions were objectively reasonable, and they are therefore entitled to qualified immunity and summary judgment should enter in their favor.

## CONCLUSION

Defendants Eddings and Feeney are entitled to partial summary judgment in their favor as to Counts I and II of the Plaintiff's Complaint, insofar as those counts allege that the Plaintiff's strip search was a violation of his constitutional rights. The Plaintiff's constitutional rights were not violated, and further Defendants are entitled to qualified immunity.

**DEFENDANTS REQUEST AN ORAL ARGUMENT FOR THIS MOTION.**

Respectfully submitted,

DEFENDANTS, MARCUS EDDINGS and
WILLIAM J. FEENEY
Merita A. Hopkins
Corporation Counsel
By his attorney,


S/Stephen G. Cox
_____
Stephen G. Cox    BBO# 566943
Assistant Corporation Counsel
City of Boston Law Department
Room 615, Boston City Hall
Boston, Massachusetts 02201
(617) 635-4064


## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)

Pursuant to L.R. D. Mass. 7.1(A)(2), I hereby certify that I have communicated with Attorney Stephen Hrones concerning Defendants Marcus Eddings and William Feeney's Motion for Summary Judgment and that we were unable to resolve or narrow the issues prior to filing the above motion.


S/Stephen G. Cox
_____
Stephen G. Cox