| SEARCH WARRANT DOCKET NUMBER | AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT | TRIAL COURT OF MASSACHUSETTS |
|---|---|---|



I, Paul T. Quinn, am a Boston Police Officer assigned to the Drug Control Unit in Area B2. The date of this affidavit in support of a search warrant is 03/14/03. I was appointed to the Boston Police Department on June 28th, 1995. I have been permanently assigned to Area B2 covering the Roxbury and Dorchester sections of the City of Boston since completion of the Boston Police Academy. Prior to my assignment to the Drug Control Division, I was assigned to the Anti-Crime Unit in Area B2 investigating street level narcotics distribution and apprehension of individuals with warrants for violations of M.G.L. 94C and other offenses. I have attended the Boston Police Academy and received additional training in drug investigations by attending a two-week seminar held by the United States Department of Justice Drug Enforcement Administration. This seminar included classes on drug detection and identification, dealing and distribution (from street level up to major trafficking levels), undercover operations, surveillance techniques, and search warrant application and execution. I have participated in the preparation and execution of over 100 search warrants. I have also attended and successfully completed a week long seminar conducted by the Federal Bureau of Investigation detailing the mechanics of all levels of drug dealing operations and utilization of undercover techniques. I am a member of the New England Narcotics Enforcement Officers Association. I obtained a Bachelors Degree in Political Science from Merrimack Collage in 1992 and a Masters Degree in Criminal Justice from Anna Maria College in 2000. I have made undercover purchases of Heroin, powder and crack Cocaine, Marijuana and MDMA (Ecstasy). I have participated and assisted in over 500 drug investigations that have led to in excess of 200 arrests for violations of the drug laws.

Within the last month, I, along with other members of the Area B2 Drug Control Unit, have received information from a 1st time Confidential Informant relative to illegal drug sales, specifically the sale of Crack Cocaine, from 58 Cheney St., Apt.#5 in Dorchester, MA in the Grove Hall neighborhood of the City of Boston. This Confidential Informant will hereinafter be referred to as ▓▓▓▓▓. ▓▓▓▓▓ stated to me that on numerous occasions in the past, ▓▓▓▓▓ has purchased Crack Cocaine from a white Hispanic male known to ▓▓▓▓▓ as ▓▓▓ from 58 Cheney St., Apt.#5. Officers are highly familiar with Cheney St. as an active area for drug sales and have executed numerous drug related Search Warrants on Cheney St. at various apartments over the last several years.

1

In order to confirm or deny allegations of this person known as ▬ selling Crack Cocaine from 58 Cheney St., Apt.#5, Officers decided to meet with '▬' and attempt a controlled purchase of Crack Cocaine from this location. On ▬ Officers met with ▬ to attempt the controlled purchase of Crack Cocaine from 58 Cheney St., Apt.#5. Officers searched ▬ and found ▬ to be free of any drugs or contraband. Officers then supplied ▬' with Department issued US Currency to pay for the drugs if the controlled purchase was successful. Officers then directed ▬ to 58 Cheney St., Apt.#5. Officers watched ▬ proceed to 58 Cheney St. and enter through the main front door. After a few moments, Officers observed ▬' exit 58 Cheney St. and return to Officers.

Upon returning to Officers, ▬' turned over a quantity of a rock like substance believed to be Crack Cocaine. This substance was similar in packaging, color and texture to Crack Cocaine I have seen in the past ready for street sale. Based on my training and experience, I believed the substance ▬ had just turned over to Officers was Crack Cocaine. Upon further debriefing, ▬' stated to Officers ▬ had just moments earlier purchased the suspected Crack Cocaine from inside 58 Cheney St., Apt.#5 from a white non Hispanic male known to ▬' as ▬ described ▬ as a white non Hispanic male, approx. 6'0" with a thin build, light complexion and approx. 25 years old. ▬' further stated to Officers that the door to Apt.#5 at 58 Cheney St. is brown in color with a number 5 clearly posted on it and a "Jesus" sign underneath the peephole on the door. Officers again searched ▬' and found ▬ to be free of any money or contraband. The debriefing then concluded and ▬ and Officers parted company.

▬ Officers again met with ▬ to attempt another controlled purchase of Crack Cocaine from 58 Cheney St., Apt.#5. Officers met with ▬, searched ▬' and found ▬ to be free of any drugs or contraband. Officers then supplied ▬' with Department issued US Currency to pay for the drugs if the controlled purchase was successful. Officers then directed ▬' to 58 Cheney St., Apt.#5. Officers watched ▬ proceed to 58 Cheney St. and enter through the main front door. After a few moments, Officers observed ▬ exit 58 Cheney St. and return to Officers.

2

Upon returning to Officers, ▇▇▇ turned over a quantity of a rock like substance believed to be Crack Cocaine. This substance was similar in packaging, color and texture to Crack Cocaine I have seen in the past ready for street sale. Based on my training and experience, I believed the substance ▇▇▇ had just turned over to Officers was Crack Cocaine. Upon further debriefing, ▇▇▇ stated to Officers ▇▇▇ had just moments earlier purchased the suspected Crack Cocaine from inside 58 Cheney St., Apt.#5 from a white non Hispanic male known to ▇▇▇" as ▇▇▇ stated "O" was the same individual who sold ▇▇▇' suspected Crack Cocaine during the controlled purchase with Officers on ▇▇▇. ▇▇▇ described ▇▇▇ as a white non Hispanic male, approx. 6'0" with a thin build, light complexion and approx. 25 years old. Officers again searched ▇▇▇ and found ▇▇▇ to be free of any money or contraband. The debriefing then concluded and ▇▇▇ and Officers parted company. Officers Kenneth Hearns and Marcus Eddings of the Drug Control Unit noted heavy foot traffic in and quickly out of 58 Cheney St. via the front door during surveillance of 58 Cheney St. before and after this controlled purchase. This type of foot traffic to and from a location is consistent with drug activity from this buidling.

During the course of this investigation, I contacted United Housing Management, a business that oversees the property at 58 Cheney St.. I informed management of our investigation and inquired as to whom the listed occupants were in order to attempt to identify ▇▇▇ the target of the drug investigation inside 58 Cheney St., Apt.#5. Management informed me that the apartment was now occupied by a Jacqueline Lugo, 10/10/82, and an infant born in 2001. However, there was not a male on the list of tenants in Apt.#5 at 58 Cheney St..

I then conducted an inquiry into the Boston Police Imaging System of white Hispanic males in the age bracket of 20-30 years old with the last name "Lugo" to attempt to identify ▇▇▇ the target of the drug operation at 58 Cheney St., Apt.#5. I retrieved several booking photos from the system of that could possibly have been ▇▇▇ and decided to have ▇▇▇ view the photos at our next meeting.

▇▇▇, Officers again met with ▇▇▇ to attempt another controlled purchase of Crack Cocaine from 58 Cheney St., Apt.#5. Prior to conducting the controlled purchase, I showed ▇▇▇ several different photographs I had obtained from the Boston Police Imaging System in my attempt to identify ▇▇▇. The photos were shown to ▇▇▇' so that only the photo itself and no other information was visible. After reviewing several photos, ▇▇▇ observed a photograph of Rolando Lugo, 02/18/81, a white Hispanic male. The photograph was a booking photo from Rolando Lugo's arrest on 11/11/01. Upon seeing the photo of Rolando Lugo, 02/18/81, ▇▇▇" immediately stated to Officers that the person in the photo was the person ▇▇▇ knew as ▇▇▇. ▇▇▇' stated that the person in the photograph was the same person ▇▇▇ had purchased Crack Cocaine from during the 2 prior controlled buys of Crack Cocaine with Officers on earlier dates. ▇▇▇ had just positively identified ▇▇▇ as Rolando Lugo, 02/18/81.

3

Officers then searched ███ ' and found ███ to be free of any drugs or contraband. Officers then supplied ███ with Department issued US Currency to pay for the drugs if the controlled purchase was successful. Officers then directed ███ to 58 Cheney St., Apt.#5. Officers watched ███ proceed to 58 Cheney St. and enter through the main front door. After a few moments, Officers observed ███ exit 58 Cheney St. and return to Officers.

Upon returning to Officers, ███ turned over a quantity of a rock like substance believed to be Crack Cocaine. This substance was similar in packaging, color and texture to Crack Cocaine I have seen in the past ready for street sale. Based on my training and experience, I believed the substance ███ had just turned over to Officers was Crack Cocaine. Upon further debriefing, ███ stated to Officers ███ had just moments earlier purchased the suspected Crack Cocaine from inside 58 Cheney St., Apt.#5 from ███. ███ further stated ███ was the same individual ███ ' had just observed in the photograph and identified as Rolando Lugo moments earlier before the controlled purchase. ███ further stated to Officers that the door to Apt.#5 at 58 Cheney St. is brown in color with a number 5 clearly posted on it and a "Jesus" sign underneath the peephole on the door. Officers again searched ███ and found ███ to be free of any money or contraband. The debriefing then concluded and ███ ' and Officers parted company. Upon arrival at Area B2, I field tested a portion of the quantity of suspected Crack Cocaine ███ had just purchased from Rolando Lugo, 02/18/81, from inside of 58 Cheney St., Apt.#5. The substance tested positive as Cocaine.

As part of this investigation, I have conducted a Board of Probation Inquiry of Rolando Lugo, 02/18/81. ███████████████████████
████████████████████████████████████████
████████████████ I reviewed the 1.1 incident report for these charges ███████ and learned Lugo listed his address as ███████ t. in the report as well as the booking sheet. ███████ is a very short walk from 58 Cheney St., Apt.#5, the location of our drug investigation. The incident report indicates ███
████████████████████████████████████████
████████████████████████████████████████
████████

4

Based on the 3 successful controlled purchases of Crack Cocaine by the Confidential Informant ▇▇▇ from Rolando Lugo, 02/18/81, aka ▇▇ from inside of 58 Cheney St., Apt.#5, the positive identification by ▇▇ of ▇ as Rolando Lugo, 02/18/81, from a photograph and the heavy foot observed by Officers to and from 58 Cheney St. consistent with drug activity, I do now believe enough probable cause exists that Rolando Lugo, 02/18/81, a white Hispanic male, appox. 6'00" with a thin build, is keeping and selling Crack Cocaine, a Class B Controlled substance, inside of 58 Cheney St., Apt.#5, Dorchester, MA.. Due to the unpredictable nature of persons coming to 58 Cheney St., Apt.#5 to purchase Crack Cocaine from inside this location, I so also request permission to search any person present at the execution of the warrant. Because some of the drug activity occurs in the nighttime, I do also request a nighttime warrant.

On today's date, Officer Michael Doyle of Area B2 observed the apartment door at 58 Cheney St., Apt.#5. Officer Doyle informed me the door to Apt.#5 was brown in color with the number 5 clearly posted on it. Officer Doyle also stated to me that underneath the peephole of Apt.#5 at 58 Cheney St. was a small sign with the words "I ask Jesus!". Officer Doyle's observations confirmed ▇▇▇ description of the door to 58 Cheney St., Apt.#5.

I swear the above statements are true to the best of my knowledge/

PAUL T. QUINN
_____
Printed Name of Affiant
Your Name

[signature]
_____
Signed under Penalties of Perjury
Signature of Affiant

Sworn and Subscribed to before
[signature]
_____
Signature of Justice, Clerk- Magistrate or Asst. Clerk

March 14, 2003
_____
Date