UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IVAN SANTIAGO, | ) | |
|     Plaintiff, | ) | C.A. No. 04-0746-JLT |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM J. FEENEY, MARCUS EDDINGS, | ) | |
| AND THE CITY OF BOSTON, | ) | |
|     Defendants | ) | |
| | ) | |

**PLAINTIFF IVAN SANTIAGO'S MOTION FOR SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

Now comes the Plaintiff, Ivan Santiago, in the above-captioned proceeding, and respectfully

requests that this Honorable Court grant partial summary judgment in his favor as to Counts I and II of

the Plaintiff's Complaint.  As grounds therefore, Plaintiff states that defendants do not dispute that

plaintiff was searched, or that he was strip searched on the relevant date, and that plaintiff is

accordingly entitled to judgment as a matter of law.  The Plaintiff also relies upon and incorporates his

Local Rule 56.1 Statement of Facts and Supporting Exhibits in support of his motion.

**STATEMENT OF THE CASE**

The plaintiff filed a complaint alleging that defendants conducted an unlawful strip search of

his person in violation of 42 U.S.C. §1983 and M.G.L. c. 12, §11I.  The plaintiff also alleges that the

City of Boston is liable for tolerating a custom of deliberate indifference to the rights of its citizens by

failing to have a clear policy regarding strip searches outside of the station, and by not adequately

training and supervising its officers on the proper procedures and methods for executing search

warrants during drug investigations. The defendants filed a motion for summary judgment as to Count

I and Count II of plaintiff's complaint insofar as those counts allege that the strip search of plaintiff

was in violation of his constitutional rights.  The plaintiff filed an opposition, and now files a cross

motion for summary judgment.  The plaintiff submits this memorandum of law in support of his

Motion for Summary Judgment.

Plaintiff incorporates by reference the facts set forth in Plaintiff's Local Rule 56.1 Statement of

Facts.

**STANDARD OF REVIEW**

Summary judgment is inappropriate when the record reflects a genuine dispute as to a material

fact. *See* Fed.R.Civ.P. 56(c).  The court, in its analysis of a summary judgment motion, must view the

evidence on record in a light most favorable to the non-moving party.  *Celotex Corp. v. Catrett,* 477

U.S. 317, 324-25 (1986).  Additionally, all factual inferences from the evidence must be drawn in

favor of the non-moving party. *Id*.

A plaintiff is entitled to summary judgment when there are no issues of material fact with

respect to each element of the cause of action and the record establishes that the plaintiff must prevail

as a matter of law.  *San Pedro v. United States*., 79 F.3d 1065, 1068 (11th Cir. 1996).  The plaintiff

must show that no reasonable trier of fact could find other than for the plaintiff because there are no

genuine issues of material fact that could absolve the defendants of liability.  *Calderone v. United*

*States*., 799 F.2d 254, 259 (6th Cir. 1986); *Chlorine Inst., Inc. v. California Highway Patrol*, 29 F.3d

495, 496 (9th Cir. 1994).

**ARGUMENT**

**I.    THE SEARCH OF THE PLAINTIFF VIOLATED CLEARLY ESTABLISHED
    FOURTH AMENDMENT RIGHTS AS A MATTER OF LAW.**

It is undisputed that plaintiff was searched by defendant Eddings, and that Defendant Feeney,

the supervising officer during the search knew Eddings was going to do so.  (Def. Statement of Facts

at ¶¶ 54-56).  Defendants were relying on an all persons warrant to justify the search of plaintiff. (Def.

Statement of Fact at ¶¶ 26-33; *Defendants Memorandum in Support of Their Motion for Summary*

2

*Judgment* at pgs 4-8).   The warrant was invalid as a matter of law as to the search of plaintiff.

Accordingly, plaintiffs are entitled to judgment as a matter of law.

It is a well-settled Fourth Amendment principle that an officer may not justify the search of a

person solely by that person's presence where illegal activity is believed to be taking place. *United*

*States v. Di Re,* 332 U.S. 581 (1948); *United States v. Festa*, 192 F.Supp. 160 (D.Mass. 1960).  In *Di*

*Re*, the Court held that an officer, having reasonable suspicion to search a vehicle, may not lawfully

search a passenger without particularized, individual suspicion.  332 U.S. at 587.  The Court stated,

"We are not convinced that a person, by mere presence in a suspected car, loses immunities from

search of his person to which he would otherwise be entitled."  *Id*.  The Court so held even though "an

automobile is more vulnerable to search without warrant than is other property…," *Id*. at 584, *citing*

*Carroll v. United States*, 267 U.S. 132 (1925), and "the contraband sought is of a *character* that [it]

might be concealed on the person." *Id*. at 584 (emphasis added).

In *Festa*, the Court similarly rejected an argument that a search warrant for a building extends

to all persons found on the premises.  *Festa*, 192 F.Supp. at 163.  The Court stated that "[i]t is not the

law that armed with a search warrant for a particular building an officer may 'search all persons found

in it.'"  *Id*., *quoting Di Re*, 332 U.S. at 587.

*Ybarra v. Illinois*, 444 U.S. 85, 92 (1979), firmly established that presence in a location where

illegal activity is believed to be taking place is insufficient to satisfy the probable cause requirement of

the Fourth Amendment.   In *Ybarra*, police officers executed a search warrant for narcotics which

listed a particular tavern and a specifically named individual to be searched. *Id.* at 90-92. Upon

arriving, the police announced that they were conducting a frisk for weapons of all persons present.

*Id*. at 88.  The police searched Ybarra, one of several patrons in the tavern.  *Id*.  Ybarra was not

specifically named in the search warrant.  *Id*. at n.2.  The Court declared the search of Ybarra

unconstitutional under the Fourth Amendment as no probable cause existed to search Ybarra or any

other patron in the tavern at the time the search warrant was executed.  *Id*. at 91-92.  The Court

examined the search warrant and application and found that the application did not allege that the

informant had ever seen a patron of the tavern purchase drugs.  *Id*.  As such, the underlying facts

contained in the application and supporting affidavit were insufficient to establish probable cause to

search Ybarra.  *Id.*

> The Supreme Court held:
>
> a person's mere propinquity to others independently suspected of a criminal activity does not,
> without more, give rise to probable cause to search that person.  This requirement cannot be
> undercut or avoided by simply pointing to the fact that coincidentally there exists probable
> cause to search…another or to search the premises where the person may happen to be.

*Id*.

While the warrant in *Ybarra* was not explicitly an "all persons warrant," a state statue allowed

officers who were executing the warrant to search any person in the place to protect himself or to

prevent the disposal or concealment of things described in the warrant.  *Ybarra*, 444 U.S. at 87 n.1.

Thus, the effect of the warrant in *Ybarra* was essentially the same an all persons warrant.  In *Ybarra*,

like here, there was no specific information in the warrant giving officers probable cause to believe

that anyone, other than the target, was involved in illegal activity.  In *Ybarra*, like here, the defendants

maintained that the warrant gave them free reign to search anyone present.  *Ybarra*, 444 U.S. at 90.[1]

And here, like in *Ybarra*, such an argument must fail.

The First Circuit has never directly decided whether a search warrant which authorizes the

police to search all persons on the premises is valid under the Fourth Amendment absent any

---

[1] Defendants correctly state that in *Ybarra,* the Court recognized that a warrant might, under the right
circumstances, provide the support needed to justify unnamed persons.  However, in order to consider
whether those circumstances are present, courts must closely scrutinize the underlying affidavit. (*See*
discussion of "the *DeSimone* standard", *infra*).   Second, the affidavit in the present case provides no
such support.

independent basis for concluding that such persons possess contraband.  However, the prevailing view

in other Circuits is that an "all persons" warrant is authorized only if the supporting affidavit

established probable cause that the evidence of illegal activity will be found upon every person likely

to fall within the warrant's scope.  *See State v. DiSimone*, 60 N.J. 319, 288 A.2d 849 (1972).  The vast

majority of federal and state courts have adopted the standard articulated in *DiSimone* (commonly

known as "the *DiSimone* standard").  *See United States v. Guadarrama,* 128 F.Supp.2d 1202, 1207

(E.D.Wis. 2001)(court notes that 30 jurisdictions adhere to the majority view expressed in *DiSimone*);

*but see id.* (at least eight jurisdictions have held or suggested that "all persons" warrants are facially

unconstitutional.); *see also Owens v. Lott,* 372 F.3d 267, 275 (4th Cir. 2004)("We agree that the

majority view, as articulated in *De Simone,* correctly holds that an "all persons" warrant can pass

constitutional muster if the affidavit and information provided to the magistrate supply enough

detailed information to establish probable cause to believe that all persons on the premises at the time

of the search are involved in the criminal activity"); *Commonwealth v. Heidelberg,* 369 Pa. Super.

398, 401 (1987)("We believe the better-reasoned approach, and the one adopted by the majority of

other jurisdictions, is found in the cases which analyze each such warrant individually in order to

determine whether an all persons present warrant was justified under the particular circumstances

present when the warrant issued.")

In *Commonwealth v. Smith*, 370 Mass. 335, 344 (1976), the Massachusetts Supreme Judicial

Court explicitly adopted the *DiSimone* standard, and held that language in a warrant permitting the

search of "any person present" on a specified premises is invalid except where circumstances are

specifically described to the issuing judge that clearly demonstrate that all persons present are

involved in, and present for the sole purpose of engaging in, the criminal activity.  The Court

emphasized that an affidavit in support of such a warrant is to be strictly scrutinized:

…. we nevertheless consider it important to stress that in the overwhelming majority of cases a search based exclusively on the somewhat vague sanction of the language in the "any person present" clause is a clear violation of the proscription against unreasonable searches. An affidavit in support of a warrant which seeks to authorize a search of "any person present" is to be strictly scrutinized. It can only be valid where the underlying circumstances presented to the issuing judge or clerk clearly demonstrate probable cause to search the named premises and to believe that all persons present are involved in the criminal activity afoot.

*Id.* at 370 Mass. at 344.

The Court in *Smith* upheld the search because the affidavit, looked at "with a view toward common sense," and with an allowance for the drawing of "reasonable inferences," established probable cause that everyone present would probably be there for the sole purpose of engaging in illegal activity. *Id*. at 342-43. To the contrary, the affidavit in this case does not support an inference that plaintiff was there solely for such an illegal purpose. In fact, there are numerous undisputed factors which undermine any such inference.

First, the search was conducted in a residential building, in the morning, where a family resided. *See State v. Anderson*, 415 N.W.2d 57 (Minn. Ct. App. 1987)(no probable cause where warrant authorized search of any person present at residence, where search conducted in residential neighborhood, in the afternoon, and persons could have had legitimate reasons for being on the premises). Second, the apartment was a primary residence occupied by Jacqueline Lugo and her two-year-old son, Gabriel. *See State v. Reid,* 319 Ore. 65, 71 (1994)(court considers fact that small children present in residence to support conclusion that there was no showing that access to residence was limited to persons to whom probable cause existed to believe that engaged in criminal activity). Finally, plaintiff was Jacqueline Lugo's partner and Gabriel's father. (Plaintiff's Statement of Facts at ¶¶2, 10). The most reasonable inference, therefore, is that plaintiff was present because his partner, the mother of his child, and his child both resided there.

Furthermore, the only reference to other persons in the affidavit was boilerplate language suggesting that "due to the unpredictable nature" of persons coming into the residence, the affiant was

requesting permission to search any person present. (Plaintiff's Statement of Facts at ¶ 5; Defendants'

Ex. E). Such language is plainly inconsistent with *Ybarra* which suggests that a person's mere

presence at a place where criminal activity taking place does not give rise to probable cause to search

that person.[2]

 In short, the search warrant was invalid as to its admonition to search all persons present, and

did not provide sufficient probable cause to search plaintiff as a matter of law. Accordingly, plaintiff

is entitled to summary judgment.

**II. THE STRIP SEARCH OF PLAINTIFF VIOLATED CLEARLY ESTABLISHED FOURTH AMENDMENT RIGHTS AS A MATTER OF LAW**

 The Supreme Court established the general Fourth Amendment standard for assessing the

reasonableness of strip searches in *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). There the Court held

that the test of reasonableness "requires a balancing of the need for the particular search against the

invasion of personal rights that the search entails." (this standard is commonly referred to as "the *Bell*

balancing test"*). Id.* The Court also held that, "courts must consider the scope of the particular

---

[2] Defendants rely upon *Quiles v. Kilson*, 337 F.Supp.2d 224, 229 (2004), in support of their argument that the search of plaintiff pursuant to the warrant was valid. This decision, which is currently on appeal (*Quiles v. Kilson*, United States Court of Appeals for the First Circuit, Docket No. 05-1026), only highlights the dangers of adopting defendants' position with respect to "all persons" warrants. There, the court concluded that the search of four minor children aged six (6), eight (8), ten (10), and twelve (12) was constitutionally sanctioned simply because the police officers entered the apartment armed with an "all persons" warrant. *Id.*. In evaluating the constitutionality of the search, the court did not consider the underlying affidavit at all. The court also did not consider the fact that absolutely no mention of children was made in the affidavit, or that there was no basis therein for finding a nexus between the place to be searched, the alleged criminal activity, and the children. *Id.* Read simply, such reasoning leads to the constitutionally problematic conclusion that anytime police officers are armed with an all persons warrant, and irrespective of what is included in the affidavit, they are invited to search whoever – however young, old, infirm, or unrelated to the alleged criminal activity -- happens to be in that location, based on nothing more than their presence. In this case, such a position would automatically render a search of Gabriel Lugo, Jacqueline Lugo's two-year-old son permissible, as well as any unlucky neighbor's child, pizza delivery person, or mail carrier who happened to be in the common hallway of the building.

intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.*

However, nearly all of the cases where the *Bell* balancing test has been employed have considered strip searches that occurred after arrest and in the custodial/institutional context. In such custodial/institutional contexts, one factor weighed heavily by courts is institutional security:

> Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. The fact of confinement as well as the legitimate goals and policies of the penal institution limits these retained constitutional rights. There must be a "mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application. This principle applies equally to pretrial detainees and convicted prisoners. A detainee simply does not possess the full range of freedoms of an unincarcerated individual. […] [M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees.

*Id*. at 545-46 (internal citations omitted); *see also Blackburn v. Snow,* 771 F.2d 556 (1st Cir. 1985)(pre-trial detainees – searches after contact visits); *Roberts v. Rhode Island,* 239 F.3d 107, 109-10 (1st Cir. 2001)( both convicted prisoners and pretrial detainees retain constitutional rights despite their incarceration, including basic Fourth Amendment rights against unreasonable searches and seizures); *Ford v. Suffolk County*, 154 F.Supp.2d 131, 140 (D.Mass. 2001)(summary judgment allowed in favor of plaintiffs where pre-arraignment arrestees strip searched by officials at county jail); *United States v. Cofield*, 391 F.3d 334 (1st Cir. 2004)(strip search conducted at precinct after arrest upheld).

Defendants rely upon *Swain v. Spinney*, 117 F.3d 1, 5 (1st Cir. 1997), for the relevant standard for the strip search in this case. However, in *Swain*, like the majority of cases dealing with strip searches, the search took place *after* the plaintiff had been arrested and transported to a police station. There the Court held that a strip search *of an arrestee at a police station* must be justified, at the very least, by reasonable suspicion that the person has drugs or contraband. *Id.* at 3-13. In such

8

circumstances, probable cause to arrest has obviously been established.  In addition, once a person is

in custody, institutional security concerns arise, which weigh heavily on one side of the *Bell* balancing

test, whereas privacy rights are diminished.  *See Bell*, 441 U.S. 520.  In fact, in *Swain* the Court

explained that, "the most compelling justification for warrantless strip and visual body cavity searches

is institutional security." *Swain*, 117 F.3d at 24.

The Fourth Amendment requires that the greater the intrusion, the greater must be the reason

for conducting a search.  *See Blackburn*, 771 F.2d at 565.  In *Swain*, the Court recognized, even in

institutional contexts, that strip searches are "demeaning, dehumanizing, undignified, humiliating,

terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission." *Swain,* 117

F.3d at 6.  In the few cases dealing with strip searches outside the institutional setting, this Circuit

required probable cause *and* some exigent circumstance which justify the strip search.  *See Burns v.*

*Loranger*, 905 F.2d 233 (1990)(upholding strip search of woman at residence based upon probable

cause and exigent circumstances, based upon fact that officers had observed commission of felony in

police presence and in plaintiff's presence, and where plaintiff had made repeated requests to use the

restroom.)  In other words, this circuit applies a probable cause standard, plus requires some exigency

demanding an immediate strip search.  *See also New Jersey v. T.L.O*, 469 U.S. 325, 382 n. 25 (1985)

("to the extent that deeply intrusive searches are ever reasonable outside the custodial context, it must

only be to prevent imminent and serious harm.")  It is not reasonable under the Fourth Amendment for

the police to use a strip search as an investigatory tool.  Clearly, plaintiff was not being held in a

custodial/institutional setting; therefore, the institutional security concerns which diminish privacy

rights in the majority of cases are neither present nor relevant.

However, even if the court were to apply the reasonable suspicion standard, there was

insufficient evidence, as a matter of law that Plaintiff had drugs concealed on his person.  There is no

dispute that defendant Eddings strip searched plaintiff while in the bathroom of 58 Cheney St #5.

(Def. Statement of Facts at ¶¶ 54-66).  There is no dispute that Defendant Feeney told Eddings to take

plaintiff into the bathroom and search him, and that defendant Feeney thought that Eddings was going

to conduct a strip search. (Def. Statement of Facts at ¶¶ 54-55.)  There is also no dispute that plaintiff

was never under arrest.  (Def. Statement of Facts at ¶ 66).  Defendants rely upon the allegations that

*Mr. Lugo* was involved in prior drug buys, that *Mr. Lugo* volunteered that he had drugs on his person,

and that Jacqueline Lugo stated, "Gabriel and Ivan they are raiding, they are raiding" to justify the

search.  (Defendants' Memorandum in Support of Motion for Summary Judgment at 9.)  Even viewed

in a light most favorable to defendants, there was insufficient basis, as a matter of law, for a generic

warrantless search, let alone a strip search.  Accordingly, plaintiff is entitled to judgment as a matter

of law.

## III.    THE SEARCH AND STRIP SEARCH OF PLAINTIFF VIOLATED PLAINTIFF'S STATE CONSTITUTIONAL RIGHTS UNDER M.G.L. C. 12 §11I AS A MATTER OF LAW

The Supreme Judicial Court has stated that the Massachusetts Civil Rights Act "MCRA" and

§1983 are parallel statutes, coextensive with each other.  *See Batchelder v. Allied Stores Corp*, 393

Mass. 819, 822-23 (1985); *Canney v. Chelsear*, 925 F. Supp 58, 68 (1st Cir. 1996).  Accordingly, the

arguments in Sections I and II, *supra*, with respect to plaintiff's claims brought pursuant to §1983

apply with equal force to plaintiff's claims pursuant to the MCRA.  Moreover, Massachusetts courts

require a higher standard with respect to all persons warrants, *see Smith*, 370 Mass. at 345-46

(adopting *DiSimone* standard and applying strict scrutiny to affidavits in support of all persons

warrants), and an equally high standard with respect to strip searches.  *See Commonwealth v. Thomas*,

429 Mass. 403, 408 (1999) ("we concluded that probable cause is the appropriate standard to apply to

strip and body cavity searches.")  Therefore, even if the court finds that plaintiff is not entitled to

summary judgment under his federal claims, summary judgment is certainly appropriate on his claims

brought under the MCRA.

### CONCLUSION

There are no issues of material fact with respect to each element of plaintiff's claims under

Count I and II of his complaint, and the record establishes that the plaintiff must prevail as a matter of

law.  For all of the foregoing reasons, the plaintiff requests that this court allow plaintiff's motion for

summary judgment.

Respectfully Submitted,
The Plaintiff Ivan Santiago,
By his attorneys,

DATED: May 2, 2005                          //S//Jessica D Hedges_____
                                            Stephen Hrones (BBO No. 242860)
                                            Jessica D Hedges (BBO No. 645847)
                                            HRONES GARRITY & HEDGES LLP
                                            Lewis Wharf–Bay 232
                                            Boston, MA 02110-3927
                                            T) 617/227-4019

### CERTIFICATE OF SERVICE

I, Jessica D Hedges, hereby certify that on this 2nd day of May, 2005, I served one true and correct copy of the foregoing PLAINTIFF IVAN SANTIAGO'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW, where unbale to do so electronically, by United States First-Class Mail, postage prepaid, as follows:  Stephen G Cox, Asst Corp Counsl, City of Boston Law Dept, City Hall, Rm 615, Boston, MA 02201.

//S//Jessica D Hedges_____
Jessica D Hedges