UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IVAN SANTIAGO, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>WILLIAM J. FEENEY, MARCUS EDDINGS, )<br>AND THE CITY OF BOSTON, )<br>)<br>    Defendants. )<br>) | C.A. No. 04-CV-10746-JLT |

**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Now comes the plaintiff, Ivan Santiago, and moves this Honorable Court for Summary Judgment as to Count III. In support of his motion, plaintiff files the following memorandum of law as well as his Local Rule 56.1 Statement and Supporting Exhibits.

**I.     STATEMENT OF THE CASE**

The plaintiff filed a complaint alleging that defendants conducted an unlawful strip search of his person in violation of 42 U.S.C. §1983 and M.G.L. ch. 12 §11I. The plaintiff also alleges that the City of Boston is liable for tolerating a custom of deliberate indifference to the rights of its citizens by failing to have a clear policy regarding strip searches outside of the station, and by not adequately training and supervising its officers on the proper procedures and methods for executing search warrants during drug investigations. The individual defendants (Eddings and Feeney) filed a motion for summary judgment as to Count I and Count II of plaintiff's complaint insofar as those counts allege that the strip search of plaintiff was in violation of his constitutional rights. Plaintiff filed an opposition, as well as a cross-motion for summary judgment. Defendant

1

City of Boston also filed a partial motion for summary judgment as to Count III of Plaintiff's Complaint. The plaintiff filed a memorandum of law in opposition to the Defendant City's Motion for Summary Judgment. The plaintiff now files this Cross-Motion for Summary Judgment against the City of Boston.

Plaintiff incorporates by reference the facts set forth in Plaintiff's Local Rule 56.1 Statement of Facts.

II.     **STANDARD OF REVIEW**

Summary judgment is appropriate when the record reflects no genuine dispute as to a material fact. *See* Fed. R. Civ. P. 56(c). The court in its analysis of a summary judgment motion must view the evidence on record in a light most favorable to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). However, only reasonable factual inferences from the evidence must be drawn in favor of the non-moving party. Id.

III.    **ARGUMENT**

   A.   **THERE IS NO MATERIAL DISPUTE THAT PLAINTIFF HAS DEMONSTRATED THE CITY OF BOSTON HAD A DELIBERATE INDIFFERENCE TO HIS CONSTITUTIONAL RIGHTS**

Plaintiff has alleged that the City of Boston (herinafter, "the City") demonstrated a custom and policy of deliberate indifference to the rights of its citizens. More specifically, the evidence shows that the City tolerated a custom of deliberate indifference to the rights of its citizens by: 1) failing to have a clear policy regarding strip searches outside of the station, while having an affirmative custom of effecting illegal strip searches during drug investigation; 2) not adequately training its officers on the proper procedures and methods for executing search warrants during drug investigations;

2

3) failing to adequately supervise its officers; and, 4) failing to conduct an adequate investigation into the facts and circumstances which resulted in the illegal search of plaintiff.

When a municipal policy is the cause of unconstitutional action taken by municipal employees, the municipality itself is liable. *See generally Monell v. Department of Social Servs.*, 436 U.S. 658 (1978). Where a single instance of conduct is an expression of an existing policy or municipal custom, liability rests with the municipality. *See*, *e.g.*, *Ruvalcaba v. Los Angeles*, 167 F.3d 514 (9th Cir. 1999) (plaintiff's evidence was sufficient to raise issue of fact as to connection between City's dog bite policy and officer's striking and kicking plaintiff).

### i.) **Plaintiff is entitled to judgment as a matter of law on his claim that the Defendant City had an affirmative custom of executing illegal searches and strip searches.**

Where plaintiff has demonstrated that the existence of a widespread practice is so well-settled as to constitute a custom or usage with the force of law, liability should be imposed whether or not official policy makers had actual knowledge of the practice. *See e.g.*, *Thompson v. Los Angeles*, 885 F.2d 1439 (9th Cir. 1989). The custom in question is attributed to the municipality when the "duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the governing body [or policy maker with responsibility for oversight and supervision] that the practices have become customary among its employees." *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987. Here, there is ample evidence of unconstitutional practices of which Defendant City was or should have been aware. When the individual officers illegally strip

searched plaintiff, they did so in accordance with the affirmative custom within the department at the time.

As outlined in Plaintiff's Opposition to [individual officer] Defendants' Motion for Summary Judgment, plaintiff was strip searched during the execution of an "all persons" search warrant in an apartment where he resided with his partner and child. The search warrant was invalid as to the search of plaintiff, and the strip search was conducted without exigency, probable cause or even reasonable suspicion. *See Plaintiff's Opposition to Defendants' Motion for Summary Judgment.*

The search of plaintiff was not an isolated incident. To the contrary, the City had an affirmative custom of: 1) searching everyone present during the execution of all persons warrants, irrespective of whether there was sufficient probable cause for such searches; and 2) strip searching individuals during the execution of search warrants. In fact, the individual defendants affirmatively state that it was the custom within the department to conduct such searches under like circumstances. Regarding the execution of all persons warrants, Defendant Feeney, who was the *supervisor* during the search testified that, if it is an "all persons warrant," "then we will search any and all persons present, because the interpretation is that probable cause exists to get the search warrant for the apartment and that transfers over to probable cause to search anybody for drugs." (Plaintiff's Statement of Facts at 25).

Defendant Eddings testified that officers have the authority to search all persons present whenever they are executing an "all persons warrant." Defendant Eddings further testified that he was trained to search "all persons present" when there is an "all persons" warrant, regardless of whether there is any knowledge of drug activity with respect to

4

that person. Defendant Eddings assumed that plaintiff had to be searched because he was in the apartment. (Id. at 24).

In addition, Officer Kenneth Hearns, a member of the same drug enforcement team as defendants, and who was present in the execution of this strip search, has admitted to conducting other non-custodial strip searches while searching for drugs. Regarding one incident in particular, he testified that there was never any arrest of the person who was strip searched for drugs; the individual was searched outside in an alley; the individual was searched while it was light outside; and that defendant Feeney had told him to check the searched individual. The same officer admitted to conducting similar strip searches outside of the station, while looking for drugs, "maybe three or four times." This officer testified that his Sergeant, Defendant Feeney, had never told him not to perform these strip searches. (Id. at 32).

Such testimony suggests that this incident was not an aberration, but both pursuant to and consistent with Police Department custom at the time. Moreover, while the City did have a relatively clear policy with respect to strip searches in the *booking* area, the policy is very ambiguous as to whether *non-custodial* strip searches are *ever* permitted without a warrant. Futhermore, if such searches are ever permitted, the regulation is also very ambiguous with respect to *how* such searches are to be conducted. (Id. at 31). The affirmative custom of conducting strip searches, along with the highly confusing policy regarding such searches demonstrate that the City's conduct was a significant moving force behind the constitutional violation. Accordingly, summary judgment for plaintiff is appropriate.

5

### ii.) Plaintiff is entitled to judgment as a matter of law on his claim that the City of Boston failed to adequately train and supervise its officers.

It is not in dispute that the City of Boston was deliberately indifferent to the rights of its citizens in failing to train its officers in the proper procedures and methods for searching and strip searching individuals. A failure to train may rise to the level of a policy or custom when it evidences deliberate indifference to the rights of citizens. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

The Court in *City of Canton* stated that a determination of a city's liability for a failure to train must focus on the adequacy of the training program in relation to the specific tasks the officers must perform. *Id*. at 390. The Court used as an example a situation where police officers must carry firearms while chasing fleeing felons. Because constitutional limitations on the use of deadly force in such a situation are "so obvious," if the municipality provided no training to its officers in the proper use of firearms during such chases, this failure could show the requisite deliberate indifference to establish liability. *Id*., *citing Tennessee* v. *Garner*, 471 U.S. 1 (1985).

Because the City must know that its officers will be doing strip searches, this situation is analogous to the example used in *City of Canton*. There was a marked lack of clarity within the department as to when, where, and how strip searches are to be conducted. *See supra*, at section "i." (*See also* Plaintiff's Statement of Facts at 26, 27, 31). However, there seems to have been a well-settled custom of strip searching individuals in a wide variety of circumstances, with various levels of suspicions. (Plaintiff's Statement of Facts at 27, 28, 31). Despite this well-settled custom, the record does not suggest that officers were provided with any training regarding strip searches.

Additionally, there was a great deal of confusion within the department with respect to the scope of "all persons warrants." (Plaintiffs Statement of Facts at 24, 25, 28). According to Defendant Eddings, officers have the authority to search all persons present whenever they are executing an "all persons warrant." Defendant Eddings testified that he was trained to search "all persons present" when there is an "all persons" warrant, regardless of whether there is any knowledge of drug activity with respect to that person. Defendant Eddings assumed that plaintiff had to be searched because he was in the apartment. (Id. at 24.) Defendant Feeney was the supervisor during the execution of the search warrant. He testified that if it is an "all persons warrant:" "then we will search any and all persons present, because the interpretation is that probable cause exists to get the search warrant for the apartment and that transfers over to probable cause to search anybody for drugs." (Id. at 25). Defendant Eddings testified that if a search warrant says that you can search anyone in the apartment, that means officers have the authority to *strip search* anyone in the apartment. (Id. at 24)

The above testimony points to serious deficiencies in the defendants' training which were a moving factor behind the violation of plaintiff's Fourth Amendment rights. Like the constitutional limitations on the use of deadly force used as an example by the Court in *City of Canton*, 489 U.S. at 390, the constitutional implications of conducting searches and strip searches absent legal justification are "so obvious" that the City has been deliberately indifferent to the constitutional rights of its citizens by failing to provide adequate instruction to its officers with respect to these issues.

> **iii.)** **Plaintiff is entitled to judgment as a matter of law on his claim that the Defendant failed to adequately supervise its officers and to adequately investigate the incident**

Additionally, the Defendant's failure to adequately supervise its officers, investigate the incident, and properly discipline the officers involved in the incident, demonstrates a custom of deliberate indifference to the rights of citizens. *See*, *e.g.*, *Vineyard v. County of Murray*, 990 F. 2d 1207 (11th Cir. 1993)(inadequate procedures for handling complaints against officers, lack of policies and procedures manual); *Gentile v. County of Suffolk*, 926 F. 2d 142 (2d Cir. 1991)(systematic mismanagement of district attorneys office and police department, including failure to investigate adequately and to discipline employees involved in misconduct).

As a judge of this court stated in *Britton v. Maloney*, 901 F. Supp. 444, 450 (D. Mass. 1995) (Gertner, J.):

> Unlike a policy which comes into existence because of the top-down-affirmative decision of a policymaker, a custom develops from the bottom-up. Thus, the liability of the municipality for customary constitutional violations derives not from its creation of the custom, but from its tolerance of or acquiescence in it.

Here, not only did the Defendants fail to take affirmative steps to adequately investigate the incident, but they attempted to gloss over the event within the department by disciplining the supervising officer only for the "technicality" of failing to document the strip search in his report. (Plaintiff's Statement of Facts at 32, 33). Courts have consistently held that the reaction of the defendants to the incident in which the plaintiff's rights were violated is illustrative, and therefore probative, of what the city's custom or policy was at the time. For instance, in *Grandstff v. City of Borger*, 797 F.2d 161, 171 (5th Cir. 1985), the court relied on the complete failure of the police department

to investigate the incident, or to discipline any of the officers involved, in order to establish the informal policy of the department:

> The disposition of the policymaker may be inferred from his conduct after the events of that night…If that episode…obtained so little attention and action by the City policymaker, the jury was entitled to conclude that it was accepted as the way things are done and have been done in the City.

Similarly, in *Bordanaro v. McLeod*, 871 F.2d 1151 (1st Cir. 1989), this Circuit held that evidence of the city's failure to investigate an incident properly and to discipline the officers involved was admissible as evidence of what customs or policies were in effect in the city at the time of the incident. *See also*, *Leach v. Shelby County Sheriff*, 891 F.2d 1241 (6th Cir. 1989)(evidence that the sheriff failed to investigate allegations that the plaintiff had been mistreated admissible as evidence of a ratification of the illegal acts and evidence of the policy of the county and sheriff); *Beck v. City of Pittsburgh*, 89 F.3d 966, 973 (3rd Cir. 1996)(recognizing that actions taken post incident "may have evidentiary value for a jury's consideration whether the City and policymakers had a pattern of tacitly approving the use of excessive force.")

Here, there is a great deal of undisputed evidence that the Defendant was more concerned with "covering-up" the incident than addressing the constitutional violations which occurred. Ivan Santiago filed a complaint with Internal Affairs against defendant officers based upon the search, strip search, and anal cavity search. The only part of the complaint that was sustained related to Defendant Feeney's failure to ensure that the strip search was documented in the police report. (Plaintiff's Statement of Facts at 33).

In a prior a complaint involving a non-custodial strip search in a public place where no arrest was made (which was also performed under defendant Feeney's watch),

9

no part of the complaint was sustained despite the fact that officer Hearns admitted to the strip search without *any* warrant, in direct violation of the Department Rules. (Id. at 32).

  Each of these facts overwhelmingly suggests that rather adequately supervising the officers who were frequently conducting such strip searches, responding to the wrongdoing of the officers involved, and investigating what individual and/or institutional shortcomings caused this violation, Defendant's primary concern was covering up what happened. Such an unfortunate decision demonstrates acquiescence in the unconstitutional conduct. The foregoing facts are not disputed and establish that the Defendant had a custom and policy of deliberate indifference to the rights of citizens; therefore, summary judgment for the plaintiff is appropriate.

               Respectfully submitted,
               The plaintiff, Ivan Santiago,
               By his attorneys,


               //S//Jessica D Hedges
               Jessica D. Hedges
               BBO # 645847
               Stephen Hrones
Dated: May 2, 2005        BBO # 242860
               HRONES, GARRITY & HEDGES
               Lewis Wharf – Bay 232
               Boston, MA 02110-3927
               T) 617-227-4019

**CERTIFICATE OF SERVICE**

      I, Jessica D Hedges, hereby certify that on this 2nd day of May, 2005, I served one true and correct copy of the foregoing PLAINTIFF IVAN SANTIAGO'S CROSS-MOTION FOR SUMMARY JUDGMENT, where unable to do so electronically, by United States First-Class Mail, postage prepaid, as follows: Stephen G Cox, Asst Corp Counsl, City of Boston Law Dept, City Hall, Rm 615, Boston, MA 02201.

                                                  //S//Jessica D Hedges
                                                  Jessica D Hedges