UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IVAN SANTIAGO,<br>    Plaintiff,<br><br>v.<br><br>WILLIAM J. FEENEY, MARCUS EDDINGS,<br>AND THE CITY OF BOSTON,<br>    Defendants | C.A. No. 04-0746-JLT |

**PLAINTIFF IVAN SANTIAGO'S OPPOSITION TO INDIVIDUAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND INCORPORATED
MEMORANDUM OF LAW**

Now comes the Plaintiff, Ivan Santiago, in the above-captioned proceeding, and respectfully requests that this Honorable Court deny the Individual Defendants' Motion for Summary Judgment. In support of his opposition, Plaintiff files the following memorandum of law. The Plaintiff also relies upon and incorporates his Local Rule 56.1 Statement of Facts and Supporting Exhibits in support of his motion.

**STATEMENT OF THE CASE**

The plaintiff filed a complaint alleging that defendants conducted an unlawful strip search of his person in violation of 42 U.S.C. §1983 and M.G.L. c. 12, §11I. The plaintiff also alleges that the City of Boston is liable for tolerating a custom of deliberate indifference to the rights of its citizens by failing to have a clear policy regarding strip searches outside of the station, and by not adequately training and supervising its officers on the proper procedures and methods for executing search warrants during drug investigations. The defendants filed a motion for summary judgment as to Count I and Count II of plaintiff's complaint insofar as those counts allege that the strip search of plaintiff

1

was in violation of his constitutional rights. The plaintiff submits this memorandum of law in opposition to the Defendants' Motion for Summary Judgment.

Plaintiff incorporates by reference the facts set forth in Plaintiff's Local Rule 56.1 Statement of Facts.

## SUMMARY JUDGMENT STANDARD

Summary judgment is inappropriate when the record reflects a genuine dispute as to a material fact. *See* Fed.R.Civ.P. 56(c). The court, in its analysis of a summary judgment motion, must view the evidence on record in a light most favorable to the non-moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324-25 (1986). Additionally, all factual inferences from the evidence must be drawn in favor of the non-moving party. *Id*.

## ARGUMENT

I.   **THE SEARCH OF PLAINTIFF VIOLATED CLEARLY ESTABLISHED FOURTH AMENDMENT RIGHTS.**

   a.   **The Warrant For The Search Of 58 Cheney Street, Apartment #5, Was Invalid As To The Search Of Plaintiff.**

It is a well-settled Fourth Amendment principle that an officer may not justify the search of a person solely by that person's presence where illegal activity is believed to be taking place. *United States v. Di Re,* 332 U.S. 581 (1948); *United States v. Festa*, 192 F.Supp. 160 (D.Mass. 1960). In *Di Re*, the Court held that an officer, having reasonable suspicion to search a vehicle, may not lawfully search a passenger without particularized, individual suspicion. 332 U.S. at 587. The Court stated, "We are not convinced that a person, by mere presence in a suspected car, loses immunities from search of his person to which he would otherwise be entitled." *Id*. The Court so held even though "an automobile is more vulnerable to search without warrant than is other property…," *id*. at 584, *citing*

*Carroll v. United States*, 267 U.S. 132 (1925), and "the contraband sought is of a *character* that [it] might be concealed on the person." *Id*. at 584 (emphasis added).

In *Festa*, the Court similarly rejected an argument that a search warrant for a building extends to all persons found on the premises. *Festa*, 192 F.Supp. at 163. The Court stated that "[i]t is not the law that armed with a search warrant for a particular building an officer may 'search all persons found in it.'" *Id*., quoting *Di Re*, 332 U.S. at 587.

*Ybarra v. Illinois*, 444 U.S. 85, 92 (1979), firmly established that presence in a location where illegal activity is believed to be taking place is insufficient to satisfy the probable cause requirement of the Fourth Amendment. In *Ybarra*, police officers executed a search warrant for narcotics which listed a particular tavern and a specifically named individual to be searched. *Id.* at 90-92. Upon arriving, the police announced that they were conducting a frisk for weapons of all persons present. *Id*. at 88. The police searched Ybarra, one of several patrons in the tavern. *Id*. Ybarra was not specifically named in the search warrant. *Id*. at 88 n.2. The Court declared the search of Ybarra unconstitutional under the Fourth Amendment as no probable cause existed to search Ybarra or any other patron in the tavern at the time the search warrant was executed. *Id*. at 91-92. The Court examined the search warrant and application and found that the application did not allege that the informant had ever seen a patron of the tavern purchase drugs. *Id*. As such, the underlying facts contained in the application and supporting affidavit were insufficient to establish probable cause to search Ybarra. *Id.*

> The Supreme Court held:
>
> a person's mere propinquity to others independently suspected of a criminal activity does not, without more, give rise to probable cause to search that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search…another or to search the premises where the person may happen to be.

*Id*. at 91.

While the warrant in *Ybarra* was not explicitly an "all persons warrant," a state statue allowed officers who were executing the warrant to search any person in the place to protect himself or to prevent the disposal or concealment of things described in the warrant. *Id*. at 87 n.1. Thus, the effect of the warrant in *Ybarra* was essentially the same as an all persons warrant. In *Ybarra*, like here, there was no specific information in the warrant giving officers probable cause to believe that anyone, other than the target, was involved in illegal activity. In *Ybarra*, like here, the defendants maintained that the warrant gave them free reign to search anyone present. *Id*. at 90.[1] And here, like in *Ybarra*, such an argument must fail.

The First Circuit has never directly decided whether a search warrant which authorizes the police to search all persons on the premises is valid under the Fourth Amendment absent any independent basis for concluding that such persons possess contraband. However, the prevailing view in other jurisdictions is that an "all persons" warrant is authorized only if the supporting affidavit established probable cause that the evidence of illegal activity will be found upon every person likely to fall within the warrant's scope. *See State v. DiSimone*, 60 N.J. 319 (1972). The vast majority of federal and state courts have adopted the standard articulated in *DiSimone* (commonly known as "the *DiSimone* standard.") *See United States v. Guadarrama,* 128 F.Supp.2d 1202, 1207 (E.D.Wis. 2001)(court notes that 30 jurisdictions adhere to the majority view expressed in *DiSimone*); *but see id.* (at least eight jurisdictions have held or suggested that "all persons" warrants are facially unconstitutional.); *see also Owens v. Lott,* 372 F.3d 267, 275 (4th Cir. 2004)("We agree that the majority view, as articulated in *De Simone*, correctly holds that an 'all persons' warrant can pass

---

[1] Defendants correctly state that in *Ybarra,* the Court recognized that a warrant might, under the right circumstances, provide the support needed to justify unnamed persons. However, in order to consider whether those circumstances are present, courts must closely scrutinize the underlying affidavit. (*See* discussion of "the *DeSimone* standard," *infra*). Second, the affidavit in the present case provides no such support.

4

constitutional muster if the affidavit and information provided to the magistrate supply enough detailed information to establish probable cause to believe that all persons on the premises at the time of the search are involved in the criminal activity"); *Commonwealth v. Heidelberg,* 369 Pa. Super. 398, 401 (1987)("We believe the better-reasoned approach, and the one adopted by the majority of other jurisdictions, is found in the cases which analyze each such warrant individually in order to determine whether an all persons present warrant was justified under the particular circumstances present when the warrant issued.")

In *Commonwealth v. Smith*, 370 Mass. 335, 344 (1976), the Massachusetts Supreme Judicial Court explicitly adopted the *DiSimone* standard, and held that language in a warrant permitting the search of "any person present" on a specified premises is invalid except where circumstances are specifically described to the issuing judge that clearly demonstrate that all persons present are involved in, and present for the sole purpose of engaging in, the criminal activity. The Court emphasized that an affidavit in support of such a warrant is to be strictly scrutinized:

> …. we nevertheless consider it important to stress that in the overwhelming majority of cases a search based exclusively on the somewhat vague sanction of the language in the "any person present" clause is a clear violation of the proscription against unreasonable searches. An affidavit in support of a warrant which seeks to authorize a search of "any person present" is to be strictly scrutinized. It can only be valid where the underlying circumstances presented to the issuing judge or clerk clearly demonstrate probable cause to search the named premises and to believe that all persons present are involved in the criminal activity afoot.

*Id*.

The Court in *Smith* upheld the search because the affidavit, looked at "with a view toward common sense," and with an allowance for the drawing of "reasonable inferences," established probable cause that everyone present would probably be there for the sole purpose of engaging in illegal activity. *Id*. at 342-43. To the contrary, the affidavit in this case does not support an inference

that plaintiff was there solely for such an illegal purpose. In fact, there are numerous factors which undermine any such inference.

First, the search was conducted in a residential building, in the morning, where a family resided. *See State v. Anderson*, 415 N.W.2d 57 (Minn. Ct. App. 1987)(no probable cause where warrant authorized search of any person present at residence, where search conducted in residential neighborhood, in the afternoon, and persons could have had legitimate reasons for being on the premises). Second, the apartment was a primary residence occupied by Jacqueline Lugo and her two-year-old son, Gabriel. *See State v. Reid,* 319 Ore. 65, 71 (1994)(court considers fact that small children present in residence to support conclusion that there was no showing that access to residence was limited to persons to whom probable cause existed to believe that engaged in criminal activity). Finally, plaintiff was Jacqueline Lugo's partner and Gabriel's father. (Plaintiff's Statement of Facts at ¶¶2, 10). The most reasonable inference, therefore, is that plaintiff was present because his partner, the mother of his child, and his child both resided there.

Furthermore, the only reference to other persons in the affidavit is boilerplate language suggesting that "due to the unpredictable nature" of persons coming into the residence, the affiant was requesting permission to search any person present. (Plaintiff's Statement of Facts at ¶5). Such language is plainly inconsistent with *Ybarra* which suggests that a person's mere presence at a place where criminal activity taking place does not give rise to probable cause to search that person. *Ybarra*, 444 U.S. at 91.[2]

---

[2] Defendants rely upon *Quiles v. Kilson*, 337 F.Supp.2d 224, 229 (D.Mass 2004), in support of their argument that the search of plaintiff pursuant to the warrant was valid. This decision, which is currently on appeal (*Quiles v. Kilson*, United States Court of Appeals for the First Circuit, Docket No. 05-1026), only highlights the dangers of adopting defendants' position with respect to "all persons" warrants. There, the court concluded that the search of four minor children aged six (6), eight (8), ten (10), and twelve (12) was constitutionally sanctioned simply because the police officers entered the apartment armed with an "all persons" warrant. *Id*. at 229. In evaluating the constitutionality of the search, the court did not consider the underlying affidavit at all. *Id.* The court also did not consider the fact that absolutely no mention of children was made in the affidavit, or that there was no basis

6

In short, the search warrant was invalid as to its admonition to search all persons present, and did not provide sufficient probable cause to search plaintiff. Accordingly, defendants' motion for summary judgment should be denied.

    **b.    Absent A Valid Search Warrant, Defendants Did Not Have Probable Cause To Search Plaintiff.**

It is well established that any intrusion upon a constitutionally-protected privacy interest without a proper warrant is "per se unreasonable under the Fourth Amendment subject only to a few specifically established exceptions." *United States v. Morris*, 977 F.2d 677 (1st Cir. 1992), *citing California v. Acevedo*, 111 S.Ct. 1982, 1991 (1991). The warrantless search of a person is permissible only "in exigent circumstances, where there is probable cause to believe that evidence would be found unless the scope of search [does] not comport with the justification for its inception." *Burns v. Loranger*, 907 F.2d 233, 236 (1st Cir. 1990). Here, absent a valid warrant, there was no probable cause to search plaintiff. Prior to the execution of the search warrant, Rolando Lugo was the only individual believed to be selling drugs from 58 Cheney Street, Apt 5. (Plaintiff's Statement of Facts at ¶¶2, 4, 20.) Moreover, when the search warrant was executed, no additional facts became known to defendants *regarding plaintiff* that would suggest an exigency requiring a warrantless search. (Plaintiff's Statement of Facts at ¶¶9-14.) Defendants rely upon the assertion that when the police entered, officers heard a female shout "Gabriel and Ivan, they're raiding, they're raiding" (Def. Statement of Facts at ¶35.) Such a statement is consistent with innocent conduct – most people might express some alarm if their apartment building was apparently about to be raided by multiple police

---

therein for finding a nexus between the place to be searched, the alleged criminal activity, and the children. *Id.* Read simply, such reasoning leads to the constitutionally problematic conclusion that anytime police officers are armed with an all persons warrant, and irrespective of what is included in the affidavit, they are invited to search whoever – however young, old, infirm, or unrelated to the alleged criminal activity -- happens to be in that location, based on nothing more than their presence. In this case, such a position would automatically render a search of Gabriel Lugo, Jacqueline Lugo's two-year-old son permissible, as well as any unlucky neighbor's child, pizza delivery person, or mail carrier who happened to be in the common hallway of the building.

7

officers. Moreover, plaintiff testified that Ms. Lugo came into the living room, not to warn them that the police were about to enter their *apartment*, but rather out of concern that police officers were going to raid the *building* in which the family lived. (Plaintiff's Statement of Facts at ¶ 12). Plaintiff maintains that this fact is immaterial because it would certainly not be enough to justify a warrantless search of plaintiff. Even if the court were to find this assertion material, what was said is in dispute, barring summary judgment for defendants.

## II.     THE STRIP SEARCH OF PLAINTIFF VIOLATED CLEARLY ESTABLISHED FOURTH AMENDMENT RIGHTS.

The Supreme Court established the general Fourth Amendment standard for assessing the reasonableness of strip searches in *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). There the Court held that the test of reasonableness "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." (This standard is commonly referred to as "the *Bell* balancing test"). *Id.* The Court also held that, "courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.*

However, nearly all of the cases where the *Bell* balancing test has been employed have considered strip searches that occurred after arrest and in the custodial/institutional context. In such custodial/institutional contexts, one factor weighed heavily by courts is institutional security:

> Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. The fact of confinement as well as the legitimate goals and policies of the penal institution limits these retained constitutional rights. There must be a "mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application. This principle applies equally to pretrial detainees and convicted prisoners. A detainee simply does not possess the full range of freedoms of an unincarcerated individual. […] [M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees.

8

*Id*. at 545-46 (internal citations omitted); *see also Blackburn v. Snow,* 771, F.2d 556 (1st Cir. 1985)(pre-trial detainees – searches after contact visits); *Roberts v. Rhode Island,* 239 F.3d 107, 109-10 (1st Cir. 2001)(both convicted prisoners and pretrial detainees retain constitutional rights despite their incarceration, including basic Fourth Amendment rights against unreasonable searches and seizures); *Ford v. Suffolk County*, 154 F.Supp.2d 131, 140 (D.Mass. 2001)(summary judgment allowed in favor of plaintiffs where pre-arraignment arrestees strip searched by officials at county jail); *United States v. Cofield*, 391 F.3d 334 (1st Cir. 2004)(strip search conducted at precinct after arrest upheld).

Defendants rely upon *Swain v. Spinney*, 117 F.3d 1, 5 (1st Cir. 1997), for the relevant standard for the strip search in this case. However, in *Swain*, like the majority of cases dealing with strip searches, the search took place *after* the plaintiff had been arrested and transported to a police station. There the Court held that a strip search *of an arrestee at a police station* must be justified, at the very least, by reasonable suspicion that the person has drugs or contraband. *Id*. at 3-13. In such circumstances, probable cause to arrest has obviously been established. In addition, once a person is in custody, institutional security concerns arise, which weigh heavily on one side of the *Bell* balancing test, whereas privacy rights are diminished. *See Bell*, 441 U.S. at 545-46. In fact, in *Swain* the Court explained that, "the most compelling justification for warrantless strip and visual body cavity searches is institutional security." *Swain*, 117 F.3d at 24.

The Fourth Amendment requires that the greater the intrusion, the greater must be the reason for conducting a search. *See Blackburn*, 771 F.2d at 565. In *Swain*, the Court recognized, even in institutional contexts, that strip searches are "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission." *Swain*, 117

F.3d at 6. Because of security concerns, the Court only required the officer to show he had a reasonable suspicion.

In the few cases dealing with strip searches outside the institutional setting, this Circuit requires probable cause *and* some exigent circumstance to justify the strip search. *See Burns*, 905 F.2d at 236 (upholding strip search of woman at residence because police had probable cause and exigent circumstances, based upon fact that officers had observed commission of felony in police presence and in plaintiff's presence, and where plaintiff had made repeated requests to use the restroom.) In other words, in non-custodial strip searches, this Circuit requires probable cause and some added exigency demanding an immediate strip search.[3] It is not reasonable under the Fourth Amendment for the police to use a strip search as an investigatory tool even if grounds for a generic search exist. Clearly, plaintiff was not being held in a custodial/institutional setting; therefore, the institutional security concerns which diminish privacy rights in the majority of cases are neither present nor relevant. As such, reasonable suspicion alone is not sufficient.

However, even if the court were to apply the reasonable suspicion standard, defendants' argument must fail because there was insufficient evidence that plaintiff had drugs concealed on his person**.** Defendants rely upon the allegations that *Mr. Lugo* was involved in prior drug buys, that *Mr. Lugo* volunteered that he had drugs on his person, and that Jacqueline Lugo stated, "Gabriel and Ivan they are raiding, they are raiding" to justify the search. (Defendants' Memorandum in Support of Motion for Summary Judgment at 9). This doesn't even give them exigent circumstances for a generic warrantless search, let alone a strip search. The first two factors are arguably irrelevant to whether

---

[3] *See also New Jersey v. T.L.O*, 469 U.S. 325, 382 n. 25 (1985) ("[T]o the extent that deeply intrusive searches are ever reasonable outside the custodial context, it must only be to prevent imminent and serious harm"). Furthermore, there are perhaps so few cases dealing with searches outside the custodial/institutional context because generally police officers are aware that such a search is generally prohibited under the fourth amendment. Such a fact undermines defendants qualified immunity argument. *See* Section III, *infra*.

10

*Mr. Santiago* had drugs on his person,[4] and the third factor regarding Ms. Lugo's statement, if material, is in dispute. Therefore, summary judgment is inappropriate.

### III. THE SEARCH AND STRIP SEARCH OF PLAINTIFF VIOLATED PLAINTIFFS STATE CONSTITUTIONAL RIGHTS UNDER M.G.L. C. 12 §11I.

The Supreme Judicial Court has stated that the Massachusetts Civil Rights Act "MCRA" and §1983 are parallel statutes, coextensive with each other. *See Batchelder v. Allied Stores Corp*, 393 Mass. 819, 822-23 (1985); *Canney v. Chelsear*, 925 F. Supp 58, 68 (1st Cir. 1996). Accordingly, the arguments in Sections I and II, *supra*, with respect to plaintiff's claims brought pursuant to §1983 apply with equal force to plaintiff's claims pursuant to the MCRA. Moreover, Massachusetts courts require a higher standard with respect to all persons warrants, *see Smith*, 370 Mass. at 345-46 (adopting *DiSimone* standard and applying strict scrutiny to affidavits in support of all persons warrants), and an equally high standard with respect to strip searches, *see Commonwealth v. Thomas*, 429 Mass. 403, 408 (1999) (holding that, even in a custodial setting "probable cause is the appropriate standard to apply to strip and visual body cavity searches.") Therefore, even should the court find that plaintiff is not entitled to relief under his federal claims, summary judgment is certainly not appropriate on his claims brought under the MCRA.

### IV. THE SEARCH AND STRIP SEARCH OF PLAINTIFF WERE IN VIOLATION OF CLEARLY ESTABLISHED LAW OF WHICH A REASONABLE OFFICER SHOULD HAVE BEEN AWARE; THUS, DEFENDANTS ARE NOT QUALIFIEDLY IMMUNE.

The search and strip search of plaintiff violated clearly established law of which reasonable officers should have been aware. Therefore, defendants are not protected on the basis of qualified immunity. An analysis of qualified immunity involves a three-step inquiry:

---

[4] Even if the court were to find these facts concerning *Mr. Lugo* marginally relevant to the analysis of whether *Mr. Santiago* had drugs on his person, these factors concerning Mr. Lugo are not enough to establish reasonable suspicion with respect to Mr. Santiago without simply imputing guilt by (assumed) association.

11

> First, a court considers whether the Plaintiff's allegations, if true, establish a constitutional violation. Second, [the court] determine[s] whether the right was clearly established at the time of the alleged violation. Finally, [the court] determine[s] whether a reasonable officer, similarly situated, would understand that the challenged conduct violated that established right.

*Kauch v. Dep't for Children, Youth and Their Families*, 321 F.3d 1, 4 (1st Cir. 2003)(internal citations omitted). As articulated in the previous section, plaintiff has asserted violations of his well-settled Fourth Amendment right not to be subjected to a search of his person without a warrant or probable cause, and not to be strip searched without probable cause that he is concealing contraband and exigent circumstances. *See* Section I, *supra*. Plaintiff has thereby satisfied the first prong of the qualified immunity analysis.

The question then becomes whether such rights were clearly established on the date of the incident, and, if so, whether reasonable police officers under the circumstances faced by the defendants could have believed that the search and strip search were lawful. A right is clearly established where, "at the time the challenged conduct occurred, the contours of the right were sufficiently plain that a reasonably prudent state actor would have realized not merely that his conduct might be wrong, but that it violated a particular constitutional right." *Martinez v. Colon*, 54 F.3d 980, 988 (1st Cir. 1995)(citations omitted). It is not necessary for courts to have agreed on the precise contours of a right in order for the right to be clearly established. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). It is enough for a plaintiff to defeat a defense of qualified immunity if "various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand." *Id*.

    **a.**    **It Was Clearly Established At The Time Of The Incident That The Search Of A Person May Not Be Justified Solely By That Person's Presence On The Premises Where A Search Warrant Is Executed.**

In 1979, the Supreme Court held in *Ybarra* that a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. 444 U.S. at 91. Something more than a checkmark in a pre-printed form is required to justify such a search, as articulated in *DeSimone* in 1972, and by the majority of courts that have since adopted the *DeSimone* standard. Significantly, the highest court in the state where the defendants perform their duties, and whose dictates defendants are bound to follow, is one such court – in 1976, the Massachusetts Supreme Judicial Court adopted the *DeSimone* standard. The court warned that "all persons" warrants would be strictly scrutinized, and held that when considering whether an "all persons" warrant comports with the Fourth Amendment, factors to consider include whether the affidavit:

> carefully delineate[s] the character of the premises, for example, its location, size, the particular area to be searched, means of access, neighborhood, its public or private character and any other relevant fact. It must specifically describe the nature of the illegal activity believed to be conducted at the location, the number and behavior of persons observed to have been present during the times of day or night when the warrant is sought to be executed. The application should also state whether any person apparently unconnected with the illegal activity has been seen at the premises. The warrant itself must limit the locus of the search to the area in which the criminal activity is believed to be confined [. . .] In determining the reasonableness of a particular warrant application, it is also appropriate to consider the necessity for this type of search, that is, the nature and importance of the crime suspected, the purpose of the search and the difficulty of a more specific description of the persons to be searched. The risk that an innocent person may be swept up in a dragnet and searched must be carefully weighed.

*Smith*, 370 Mass. at 345-46 (footnote omitted). *Smith* therefore provides a strong and clear warning to police officers working within the Commonwealth: where persons are searched pursuant to "all persons" warrants, without detailed support in the application and supporting affidavit, a Fourth Amendment violation will be found.

"When determining whether a constitutional right is clearly established for purposes of qualified immunity, state, as well as federal decisions can be considered." *Starlight Sugar, Inc. v.*

*Soto*, 253 F.3d 137,143-44 (1st Cir. 2001). Absent any definitive ruling by the First Circuit, members of the Boston Police Department should certainly be expected to be aware of the clear guidelines provided in *Smith*. It is simply untenable that a reasonable officer would not have known of this clear mandate, handed down nearly thirty years ago, by the highest court in the Commonwealth.

The next question becomes whether a reasonable officer would have believed that the affidavit supporting this search warrant would have justified the search of plaintiff. There was a meeting before the execution of the search warrant with all members of the team, including the individual defendants. (Plaintiff's Statement of Facts at ¶8.) A picture of Mr. Lugo was shown at this meeting. Defendants knew that Mr. Lugo was the target of the warrant, and that no other person was mentioned on the warrant (Plaintiff's Statement of Facts at ¶¶8, 20). The affidavit states, "Due to the unpredictable nature of persons coming to 58 Cheney St., Apt. #5 to purchase Crack Cocaine from inside this location, I so also request permission to search any person present at the execution of the warrant." *Id.* at 5. This is the only reference in the affidavit to the need to search other persons present. There is no mention of other persons being present during the several controlled buys. While the affidavit mentions that a discussion with the building manager revealed that Jacqueline Lugo resides at apartment number 5 with her infant, despite a month-long investigation, there is no description of personal observations of these or other innocent persons who may reside in that apartment, or in the building. *Id*. at 5. Moreover, while the affidavit requests permission to search the basement and hallways of the building, there is no mention of the number of families who live in the building, or the means of access to the building, or whether innocent persons may be found in the common areas of the building. (Plaintiff's Statement of Facts at ¶¶4-6).[5] Clearly, the affidavit in this

---

[5] Defendants may assert that they did not personally read the affidavit, and cannot be expected to know its contents. However, it is reasonable to infer that they had the opportunity to discuss the above factors at the preparatory meeting. Moreover, even if defendants were to argue that the facts in the affidavit were not discussed, a reasonable officer would have inquired into these factors before executing a warrant so as not to violate the rights of innocent parties. *See United States v. Zurosky*,

case did not meet the requirements set forth by the *Smith* court to ensure that innocent persons are not "swept up in a dragnet" and thereby subjected to an unreasonable search. *Smith*, 370 Mass. at 346. Under such circumstances, no reasonable police officer working within the Commonwealth could have believed that the warrant issued based upon this affidavit permitted a search of plaintiff.

      b.    **It Was Clearly Established At The Time Of The Raid That The Strip Search Of The Plaintiffs Was Unconstitutional.**

Similarly, reasonable officers in a similar situation would have recognized that the strip search of plaintiff under these circumstances was unreasonable.[6] As previously noted, in *Burns*, 907 F.2d at 236, this Circuit held that a strip search is only justified when the officer has probable cause to believe the person is concealing contraband on his person and there exists some exigent circumstance requiring an immediate strip search. In *Swain*, 117 F.3d at 5, this Circuit held that even strip searches of detainees must be supported by at least a reasonable suspicion.

Furthermore, as noted above, state law is instructive for purposes of qualified immunity analysis. In 1999, the Supreme Judicial Court stated: "we conclude that probable cause is the appropriate standard to apply to strip and visual body cavity searches." *Thomas*, 429 Mass. at 408. Although *Thomas* dealt with custodial searches, that case is not "distinguishable in a fair way" from the case at bar because it is not reasonable for the Defendant to assume that a lesser standard would be required for non-custodial strip searches. *See Saucier*, 533 U.S. at 202.

---

614 F.2d 779, 786 (1st Cir. 1979)("[F]ellow officer rule" followed in this Circuit, which states that "joint knowledge of [officers'] activities could legitimately be imputed to all agents acting in concert.")

[6] As previously stated, there are very few cases dealing with strip searches *before* a lawful arrest, perhaps suggesting that reasonable officers *do* know that such searches are unreasonable, and accordingly do not perform them.

Again, it is simply untenable that a reasonable office working in the Commonwealth would believe that a pre-arrest strip search, outside the station, under these circumstances was sanctioned by the Fourth Amendment.

## CONCLUSION

For all of the foregoing reasons, the plaintiff requests that this court deny the defendants' motion for summary judgment. There is sufficient evidence of each claim to permit a reasonable jury to conclude that the defendants are liable to the plaintiff for his injuries caused by an unlawful search and strip search.

Respectfully Submitted,
The Plaintiff, Ivan Santiago,
By his attorneys,

//S//Jessica D Hedges_____
Stephen Hrones (BBO No. 242860)
Jessica D Hedges (BBO No. 645847)
HRONES GARRITY & HEDGES LLP
Lewis Wharf–Bay 232
Boston, MA 02110-3927
T)617/227-4019

DATED: May 2, 2005

## CERTIFICATE OF SERVICE

I, Jessica D Hedges, hereby certify that on this 2nd day of May, 2005, I served one true and correct copy of the foregoing PLAINTIFF IVAN SANTIAGO'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW by United States First-Class Mail, postage prepaid, as follows: Stephen G Cox, Asst Corp Counsl, City of Boston Law Dept, City Hall, Rm 615, Boston, MA 02201.

//S//Jessica D Hedges_____
Jessica D Hedges