UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IVAN SANTIAGO, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>WILLIAM J. FEENEY, MARCUS EDDINGS, )<br>AND THE CITY OF BOSTON, )<br>    Defendants )<br>) | C.A. No. 04-0746-JLT<br><br>**PLAINTIFF IVAN SANTIAGO'S STATEMENT OF DISPUTED FACTS PURSUANT TO LOCAL RULE 56.1 AND SUPPORTING EXHIBITS** |

    **Pursuant to Fed.R.Civ.P. 56, the Plaintiff respectfully requests that this Honorable Court deny the Defendants' motions for summary judgment. As grounds therefor, the Plaintiff submits his Opposition to Defendants' Motion for Summary Judgment filed contemporaneously herewith, and provides the following statement of disputed facts and accompanying exhibits:**

    The plaintiff, Ivan Santiago, submits the following:

1. On March 14, 2003, Officer Paul Quinn sought a search warrant for a search of 58 Cheney St, Apt. #5 in Dorchester, MA. (*Ex. D; Ex. E*.)

2. Officer Quinn submitted an affidavit in support of his application in which he asserted, *inter alia*, that several controlled buys of crack cocaine had be made from this location. (*Ex. D*.) The informant identified Rolando Lugo as the individual who had sold him the crack cocaine. (*Ex. D* at 3.) In this affidavit Quinn states that the manager of the building informed him that this residence was occupied by Jacqueline Lugo and an infant born in 2001. (*Ex. D* at 3.) The affidavit further states that Rolando Lugo's address was listed at a different location. (*Id*. at 4.)

3. Rolando Lugo was the sole target of the investigation. (*Ex. A* at 15; *Ex. D; Ex E.*)

4. The affidavit states, "[…] I do now believe enough probable cause exists that Rolando Lugo, 2/18/81, a white Hispanic male, aprrox. 6'00' with a thin build is keeping and selling Crack cocaine, a Class B. Controlled substance inside of 58 Cheney St, Apt #5 Dorchester MA." (*Ex. D* at 5.)

5. The sole statement in the affidavit in support of the request for an "all persons warrant" provides: "Due to the unpredictable nature of persons coming to 58 Cheney St., Apt. #5 to purchase Crack Cocaine from inside this location, I also

> request permission to search any person present at the execution of the warrant." (*Ex. D* at 5.)

6. The warrant and application in support of the warrant describes 58 Cheney St. as "a large 4 story brown brick building." (*Ex. E.*) The application indicates that Apartment 5 is on the 2nd floor. (*Ex. E* at 1.)

7. On the warrant, a pre-printed form, there is a line stating, "You are [or are not] also commanded to search any person present who may be found to have such property in his or her possession or under his or her control or to whom such property may have been delivered. (*Ex. E* at 2.) The warrant for 58 Cheney St., Apt. 5 has a check mark next to the "you are […] also commanded to search any person present […]" box. (*Id.*)

8. Preparations were made with all members of the Drug Unit before entry. (*Ex. A*, at 17.) A picture of Rolando Lugo was shown to the officers at this preparatory meeting. (*Id.*)

9. On March 20, 2003, at 10:53 a.m., several members of the Area B-2 Drug Control Unit executed the search warrant under the supervision of Defendant Feeney. (*Ex. F.*)

10. Mr. Santiago lived at this residence with his girlfriend Jacqueline Lugo and their two-year-old son Gabriel. (*Ex. C.* at 13, ll. 20-24; 31, ll. 2-3.)

11. Mr. Lugo did not live at the residence, but rather, occasionally stayed there as he was Jacqueline Lugo's younger brother. (*Ex. C.* at 13, ll. 20-24.)

12. Just before the police entered, Jacqueline Lugo saw the police entering the back entrance of the building. She told plaintiff and her brother that the police were about to raid somebody in the facility. (*Ex. C* at 17, ll. 22-24; 18, ll. 21-24.) At the time, plaintiff and Rolando Lugo were in the living room playing video games. (*Id.* at 18-19.) In "like a matter of three seconds" police entered through the door. (*Id.* at 26.) They immediately put Lugo and Santiago in handcuffs. (*Id.*) They took Lugo into a bedroom and put plaintiff on the living room sofa. (*Id.* at 22.)

13. Rolando Lugo directed the officers to contraband in the apartment, and produced drugs from his buttocks area. (*Ex. F* at 2-3.) Mr. Lugo was arrested. (*Id.*)

14. Police officers frisked plaintiff several times. (*Ex. C.* at 25-26.)

15. Defendant Eddings took plaintiff into the bathroom so that he could search him. (*Ex. A* at 28, ll. 14-18.) According to Defendant Eddings, plaintiff was handcuffed. Eddings un-cuffed plaintiff and told him to take off his clothes piece

      by piece. He then ordered him to take off every strip of clothing. (*Id.* at 31, 32; *Ex. C.* at 38.)

16. Once plaintiff had his clothes off, defendant Eddings told him to lift up his scrotum, and then asked him to turn around, bend forward, and "spread his butt cheeks." (*Ex. C.* at 41-42.)

17. Defendant Eddings also inserted his finger into plaintiff's anus while plaintiff was bending over. (*Ex. C* at 41-42.)

18. At the time that plaintiff was strip searched, he was not under arrest. (*Ex. A* at 39, ll. 12-17.) Plaintiff was not placed under arrest at any time. (*Id*. at ll. 16-20.)

19. According to Defendant Eddings, no one told him to do the strip search, but his supervisor knew he was going to do it. (*Ex. A* at 32-33.)

20. Defendant Eddings had no information that plaintiff was involved in the drug dealing at the time that he strip searched him. (*Ex. A* at 29, ll. 10-16.)

21. Defendant Eddings believed that he had a right to strip search plaintiff based upon his assertion that a female told Ivan and Rolando that the police were coming to raid, and the fact that Mr. Lugo had drugs in his buttocks area. (*Ex. A* at 29-30.)

22. Defendant Eddings testified that in order to do a strip search at the station, "You would have to have probable cause. You would notify the duty supervisor or request it from the duty supervisor. You would have to state the facts why you believed that this person is to be strip searched. They would say yes or no." However, Defendant Eddings testified that when officers are in an apartment pursuant to a search warrant, officers *do not* have to go to a duty supervisor to get permission. (*Ex. A* at 47.)

23. Defendant Eddings testified that pursuant to the rules and regulations, it is supposed to be documented in the search warrant when there is a strip search. (*Ex. A* at 47, ll.16-24; 48, l.1-3.) However, here no such indication was made in the Incident Report here. (*Id.* at 48, ll. 14-20; *Ex. F.)*

24. According Defendant Eddings, officers have the authority to search all persons present whenever they are executing an "all persons warrant." (*Ex. A* at 25, ll. 21-24.) Defendant Eddings testified that he was trained to search "all persons present" when there is an all persons warrant, regardless of whether there is any knowledge of drug activity with respect to that person. (*Id*. at 25, ll. 14-20.) Defendant Eddings assumed that plaintiff had to be searched because he was in the apartment. (*Id*. at 25 ll. 5-7.)

25. Defendant Feeney was the supervisor during the execution of the search warrant. (*Ex. B* at 15, ll. 2.) He testified that if it is an "all persons warrant", "then we will search any and all persons present, because the interpretation is that probable cause exist to get the search warrant for the apartment and that transfers over to probable cause to search anybody for drugs." (*Ex. B*. at 28.)

26. Defendant Eddings testified that he is permitted to strip search someone who is not under arrest, and that it is done "from time to time." (*Ex. A* at 39, ll. 17-24.)

27. Defendant Eddings testified that if a search warrant says that you can search anyone in the apartment, that means officers have the authority to *strip-search* anyone in the apartment. (*Ex. A* at 26, ll. 6-14; 64; 67; 73.)

28. **Defendant Feeney testified that a search warrant says you can search any one in the apartment officers *do not* have the authority to strip search any one in the apartment, as "a strip search is certainly more of an intrusive action." (*Ex. B*. at 33; 34 at ll. 9-10.)**

29. Defendant Feeney had not read the search warrant affidavit at the time of the search. (*Ex. B*. at 35, ll. 11-13.)

30. Defendant Feeney testified that he, "felt that Santiago could have drugs secreted somewhere on his body." When asked if he "had a suspicion that he might [have drugs secreted on his body] because the other guy had it", he responded, "I felt there was a good probability he did." (*Ex. B*. at 36-37.)

31. At the time of the search, Rule 318D governed Strip and Search and Body Cavity Procedures. The Rule, which is attached as Exhibit G and incorporated in this statement by reference, provides detailed guidelines as to strip searches at the station, but is very ambiguous with whether non-custodial strip searches are ever permitted without a warrant explicitly permitting a *strip search*. Moreover, if such searches are ever permitted, the regulation is also very ambiguous with respect to how such searches are to be conducted. (*Ex. G* at 1-2.)

                                            Respectfully Submitted,
                                            The Plaintiff, Ivan Santiago*,*
                                            By his attorneys,

                                            //S//Jessica D Hedges
                                            Stephen Hrones (BBO No. 242860)
                                            Jessica D Hedges (BBO No. 645847)
                                            HRONES GARRITY & HEDGES LLP
                                            Lewis Wharf–Bay 232
                                            Boston, MA 02110-3927
                                            T)617/227-4019

**CERTIFICATE OF SERVICE**

  I, Jessica D Hedges, hereby certify that on this 2nd day of May, 2005, I served one true and correct copy of the foregoing PLAINTIFF IVAN SANTIAGO'S STATEMENT OF DISPUTED FACTS PURSUANT TO LOCAL RULE 56.1 AND SUPPORTING EXHIBITS by United States First-Class Mail, postage prepaid, as follows: Stephen G Cox, Asst Corp Counsl, City of Boston Law Dept, City Hall, Rm 615, Boston, MA 02201.

                //S//Jessica D Hedges_____
                Jessica D Hedges