UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IVAN SANTIAGO, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil Action No. 04-10746-JLT |
| | * |
| WILLIAM J. FEENEY, MARCUS EDDINGS, | * |
| and the CITY OF BOSTON, | * |
| | * |
| Defendants. | * |

MEMORANDUM

July 26, 2005

TAURO, J.

Plaintiff Ivan Santiago alleges that Boston Police Officer Marcus Eddings ("Eddings"), at the direction of Sergeant Detective William J. Feeney ("Feeney"), conducted an unlawful strip search and body cavity search of his person.[1]  Plaintiff advances claims against Eddings and Feeney under 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act ("MCRA") for violating his federal and state constitutional rights.  Plaintiff also advances a § 1983 claim against the City of Boston for having a custom of effecting illegal strip searches during drug investigations, failing to adequately supervise and train its officers in the proper search procedures, and failing to investigate complaints concerning unlawful searches.

**Background**

On March 14, 2003, Paul T. Quinn, a Boston Police Officer assigned to the Drug Control Unit in Area B-2, submitted an application for a search warrant of 58 Cheney Street, Apt. # 5

---

[1] Because genuine issues of material fact remain concerning Plaintiff's body cavity search allegation, this court will not address the issue.

("Apartment") in Dorchester, Massachusetts.[2]  In his supporting affidavit, Officer Quinn indicated that a confidential informant ("informant") made three controlled purchases of crack cocaine from the Apartment.[3]  The informant identified Rolando Lugo as the person who sold the crack cocaine.[4]  Officer Quinn noted that "[o]fficers are highly familiar with Cheney St. as an active area for drug sales," and that officers had observed "heavy foot traffic in and quickly out of 58 Cheney St." before and after a controlled purchase of crack cocaine.[5]  Officer Quinn explained that the only listed occupants of the Apartment were Jacqueline Lugo, and her infant son, Gabriel.[6]  Officer Quinn indicated that the door to the Apartment was brown, had the number five clearly posted on it, and underneath the peephole was "a small sign with the words 'I ask Jesus.'"[7]  Based on this evidence, Officer Quinn believed probable cause existed that Rolando Lugo was "keeping and selling" crack cocaine from the Apartment.[8]  "Due to the unpredictable nature of persons coming to 58 Cheney St., Apt # 5," Officer Quinn also requested "permission to search any person present at the execution of the warrant."[9]  The application for the search warrant was pre-approved by Assistant District Attorney Michael Cornelius and signed by First Assistant Clerk

---

[2] Defs.' Statement of Facts Ex. E ("Quinn Aff.") at 1, 5.

[3] Id. at 5.

[4] Id. at 3-4.

[5] Id. at 1, 3.

[6] Id. at 3.

[7] Id. at 5.

[8] Id.

[9] Id.

Magistrate Patricia F. McDermott.[10]

On March 20, 2003, at approximately 10:53 a.m., members of the Area B-2 Drug Control Unit executed the search warrant under the supervision of Defendant Feeney.[11] As the officers approached 58 Cheney St., Plaintiff alleges that Jacqueline Lugo, Plaintiff's girlfriend, told him and her brother, Rolando Lugo, that the police were about to raid someone in the building.[12] Defendants insist that when the officers approached the Apartment, they heard a female shout, "Gabriel and Ivan, they're raiding, they're raiding!"[13] Defendants also maintain that the officers knocked on the Apartment's door and announced, "Boston police, search warrant."[14] After receiving no response, the officers used a key to open the door of the Apartment.[15] Plaintiff claims that the officers entered the Apartment seconds after Jacqueline Lugo observed the officers at the building.[16]

Upon entering the Apartment, the officers handcuffed Plaintiff and Rolando Lugo. The officers escorted Mr. Lugo into a bedroom and placed Plaintiff on the living room sofa.[17] After the officers arrested Mr. Lugo and advised him of his Miranda rights, Mr. Lugo told the officers

---

[10]Defs.' Statement of Facts ¶¶ 30, 31, 34.

[11]Id. ¶ 35.

[12]Pl.'s Statement of Disputed Facts ¶¶ 10, 12.

[13]Defs.' Statement of Facts ¶ 36.

[14]Id. ¶ 38.

[15]Id.

[16]Pl.'s Statement of Disputed Facts ¶ 12.

[17]Id.

that some .380 ammunition rounds were in the corner of the bedroom and drug paraphernalia was in a drawer.[18] Mr. Lugo also informed the officers that he had $400 to $500 of currency on him and some "drugs in his ass."[19] The officers recovered the drug paraphernalia from the drawer and crack cocaine from Mr. Lugo's buttocks area. The officers did not find the money nor the ammunition. After further questioning, Mr. Lugo stated that drugs were also located in a stuffed animal on the dresser. An officer recovered a medium bag of cocaine from the stuffed animal.[20]

While Mr. Lugo was being questioned, Defendant Eddings searched the kitchen and the bathroom.[21] Feeney then told Eddings to take Plaintiff into the bathroom and search him.[22] Eddings walked Plaintiff to the bathroom, removed Plaintiff's handcuffs, and closed the bathroom door.[23] Prior to the strip search, Plaintiff alleges that the officers frisked him several times.[24]

During the strip search, Eddings ordered Plaintiff to remove all of his clothing and told him to lift up his scrotum, turn around, bend forward, and "spread his butt cheeks."[25] Plaintiff also claims that Eddings inserted his finger into Plaintiff's anus.[26]

---

[18] Defs.' Statement of Facts ¶¶ 42, 45-46.

[19] Id. ¶ 46.

[20] Id. ¶¶ 47-49.

[21] Id. ¶ 50.

[22] Id. ¶ 54.

[23] Id. ¶¶ 58-60.

[24] Pl.'s Statement of Disputed Facts ¶ 14.

[25] Id. ¶¶ 15-16.

[26] Id. ¶ 17.

After the strip search, Eddings determined that Plaintiff had no drugs on his person. Eddings allowed Plaintiff to put his clothes back on. Eddings then re-cuffed Plaintiff and walked him back to the living room. Plaintiff was not arrested.[27] Plaintiff states that he lived at the Apartment with Jacqueline Lugo and their two-year-old son, Gabriel.[28]

Defendants deny that Eddings conducted a body cavity search. Defendants admit, however, that Eddings strip searched Plaintiff. Eddings and Feeney have moved for summary judgment on Plaintiff's claims relating to the strip search. The City of Boston has moved for summary judgment on Plaintiff's § 1983 claim. And Plaintiff has filed motions for summary judgment on the same claims.

## Discussion

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate only if the record reveals that there is "no genuine issue as to any material fact and . . . the moving party [has demonstrated an] entitle[ment] to a judgment as a matter of law."[29] Pursuant to this standard, the "party seeking summary judgment [must] make a preliminary showing that no genuine issue of material fact exists. Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue."[30]

---

[27]Defs.' Statement of Facts ¶¶ 65-66.

[28]Pl.'s Statement of Disputed Facts ¶ 10.

[29]Fed. R. Civ. P. 56(c).

[30] Blackie v. Maine, 75 F.3d 716, 721 (1st Cir. 1996) (quoting Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995)).

In deciding whether to allow a motion for summary judgment, a court "'must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'"[31]  But, a court "need not credit 'conclusory allegations, improbable inferences, and unsupported speculation.'"[32]

Of course, "[t]he happenstance that all parties seek summary judgment neither alters the yardstick nor empowers the trial court to resolve authentic disputes anent material facts."[33]  A court considering cross-motions for summary judgment "must evaluate each motion separately, being careful to draw inferences against each movant in turn."[34]  A motion for summary judgment is meant "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required."[35]

A.   <u>Eddings and Feeney</u>

Section 1983 "'supplies a private right of action against a person who, under color of state law, deprives another of rights secured by the Constitution or by federal law.'"[36]  Here, it is undisputed that both Eddings and Feeney were acting under the color of state law.  And Feeney

---

[31]<u>Mullin v. Raytheon Co.</u>, 164 F.3d 696, 698 (1st Cir. 1999) (quoting <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 115 (1st Cir. 1990)).

[32]<u>Bloomfield v. Bernardi Automall Trust</u>, 170 F. Supp. 2d 36, 40 (D. Mass. 2001) (quoting <u>Medina-Munoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990)).

[33]<u>Griggs-Ryan</u>, 904 F.2d at 115.

[34]<u>Id.</u>

[35]<u>Mullin</u>, 164 F.3d at 698 (quoting <u>Wynne v. Tufts Univ. Sch. of Med.</u>, 976 F.2d 791, 794 (1st Cir. 1992)).

[36]<u>Frazier v. Fairhaven Sch. Comm.</u>, 276 F.3d 52, 57 (1st Cir. 2002) (quoting <u>Evans v. Avery</u>, 100 F.3d 1033, 1036 (1st Cir. 1996)).

concedes that his conduct created "a sufficient affirmative link . . . to establish supervisory liability."[37]

To establish a claim under the MCRA, Plaintiff "must prove that his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth has been interfered with, or attempted to be interfered with, and that the interference or attempted interference was by 'threats, intimidation or coercion.'"[38] Eddings and Feeney concede that an unconstitutional strip search of Plaintiff would violate the MCRA.[39]

Eddings and Feeney argue that even if they violated Plaintiff's federal or state constitutional rights, this court should grant them qualified immunity because "their conduct was objectively reasonable in light of clearly established law."[40] For the relevant aspects of this case, Massachusetts law is more clearly established than its federal counterpart. In addition, § 1983 and the MCRA employ the same qualified immunity standard.[41] This court, therefore, will begin its analysis by determining whether Eddings and Feeney are entitled to qualified immunity with respect to Plaintiff's MCRA claim.

"A three-part test is used to determine if an official is entitled to qualified immunity."[42]

---

[37]Def. Eddings' and Def. Feeney's Mem. Supp. Mot. for Summ. J. at 3 & n.1 (citing Seekamp v. Michaud, 109 F.3d 802, 808 (1st Cir. 1997)).

[38]Bally v. Northeastern Univ., 532 N.E.2d 49, 51-52 (Mass. 1989) (internal numbering omitted).

[39]Def. Eddings' and Def. Feeney's Mem. Supp. Mot. for Summ. J. at 16 n.10.

[40]Id. at 10, 21.

[41]Duarte v. Healy, 537 N.E.2d 1230, 1232 (Mass. 1989).

[42]Kauch v. Dept. for Children, Youth & Their Families, 321 F.3d 1, 4 (1st Cir. 2003) (internal citations and quotations omitted).

"First, a court considers whether the plaintiff's allegations, if true, establish a constitutional violation."[43] Second, a court determines "whether the right was clearly established at the time of the alleged violation."[44] Third, a court determines "whether a reasonable officer, similarly situated, would understand that the challenged conduct violated that established right."[45] "In the end, the qualified immunity defense should prevail unless the unlawfulness of the challenged conduct was 'apparent' when undertaken."[46]

Plaintiff asserts that the "any person present" warrant at issue was invalid. Plaintiff argues that a search of an apartment, in the morning, where a family resides, cannot support a finding that all persons present are involved in the criminal activity.[47] Without a valid "any person present" warrant, Plaintiff contends that Eddings and Feeney did not have probable cause to search him. Plaintiff further argues that the officers did not possess the heightened level of justification needed to conduct a strip search of his person.[48]

In *Commonwealth v. Smith*, the Supreme Judicial Court held that an "any person present" warrant is valid "where the underlying circumstances presented to the issuing judge or clerk clearly demonstrate probable cause to search the named premises and to believe that all persons

---

[43] Id.

[44] Id.

[45] Id.

[46] Limone v. Condon, 372 F.3d 39, 44 (1st Cir. 2004) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

[47] Pl.'s Mot. for Summ. J at 5-7.

[48] See id. at 10-11.

8

present are involved in the criminal activity afoot."[49]  To demonstrate that all persons are involved in the criminal activity, the Court indicated that the underlying affidavit should contain the following facts: the area to be searched is "small, confined, and private; the nature of the criminal activity is such that the participants (in general) constantly shift or change"; and the items that are the "target of the search are of a size or kind which renders them easily and likely to be concealed on the person."[50]  The affidavit should also describe the premises' "location, size, the particular area to be searched, means of access, [and] neighborhood."[51]

In *Commonwealth v. Thomas*, the Supreme Judicial Court determined that officers must have probable cause that an arrestee is concealing drugs on his person before conducting a strip search.[52]  Like other courts, the Supreme Judicial Court recognized that strip searches "impinge seriously on a person's privacy."[53]  But the Court acknowledged that such searches may be necessary in certain cases.[54]

For the purposes of the qualified immunity analysis, this court will accept Plaintiff's argument that the search warrant in this case violated Massachusetts law because it authorized the search of any person present at an apartment where a family resides, namely, a two-year old.[55]

---

[49]Commonwealth v. Smith, 348 N.E.2d 101, 107 (Mass. 1976).

[50]Id.

[51]Id.

[52]Commonwealth v. Thomas, 708 N.E.2d 669, 673 (Mass. 1999).

[53]Id. at 673 n.5.

[54]Id.

[55]See State v. Reid, 872 P.2d 416, 419 (Or. 1994) (noting that the presence of children does not support a finding that all persons present at a residence are engaged in criminal activity);

9

Without a valid warrant and based on the undisputed facts, this court will also assume that there was insufficient evidence to justify Eddings' strip search of Plaintiff. And as noted above, Massachusetts law concerning "any person present" warrants and strip searches was clearly established when Eddings strip searched Plaintiff.

The question that remains, therefore, is whether a reasonable officer in Eddings' and Feeney's situation would have understood that the strip search of Plaintiff pursuant to the instant "any person present" warrant was unlawful. To answer this question, this court must address two issues. The first issue is whether a reasonable officer would have believed that the "any person present" warrant was valid. The second issue is whether a reasonable officer would have believed that probable cause existed that Plaintiff was concealing drugs on his person.

This court finds that a similarly situated officer would have believed that the instant "any person present" warrant was valid. To start, First Assistant Clerk Magistrate Patricia F. McDermott approved the warrant.[56] In addition, the warrant comported with almost all of the factors enumerated by the Supreme Judicial Court in *Smith*. Officer Quinn's affidavit indicated that an informant made three controlled purchases of crack cocaine at the Apartment. The search was limited to the Apartment and the common areas the occupants could access.[57] The officers observed heavy foot traffic to and from the Apartment consistent with drug activity. Officer

---

see also Commonwealth v. Souza, 675 N.E.2d 432, 436 (Mass. App. Ct. 1997) (citing *Reid* favorably).

[56]See Mass. v. Sheppard, 468 U.S. 981, 989-90 (1984) (finding that an officer is not "required to disbelieve a judge who has just advised him . . . that the warrant he possesses authorizes him to conduct the search he has requested").

[57]Defs.' Statement of Facts Ex. F ("Warrant Application") at 1.

Quinn explained that "[o]fficers are highly familiar with Cheney St. as an active area for drug sales." Officer Quinn described the entrance to the Apartment, including the "I ask Jesus" sign that was posted below the peephole. Furthermore, the target item of the search, crack cocaine, can be "easily and likely" concealed on the person. Indeed, the target of the investigation, Rolando Lugo, did just that.

This court also finds that the unlawfulness of Eddings' strip search of Plaintiff was not "apparent." "[P]robable cause . . . deal[s] with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."[58] Here, the officers had a search warrant authorizing a search of "any person present" at the Apartment. As they approached the Apartment, the officers heard a woman informing Plaintiff of their presence at the building.[59] Upon entering the Apartment, the officers handcuffed Plaintiff and Rolando Lugo, two non-occupants of the Apartment. After arresting and questioning Mr. Lugo, officers found drug paraphernalia, cocaine, and crack cocaine concealed on Mr. Lugo's person. Based on these facts, Eddings' and Feeney's determination that probable cause existed to strip search Plaintiff was not "clearly" wrong.[60]

Based on this finding, Eddings and Feeney are also entitled to qualified immunity with

---

[58]Commonwealth v. Prophete, 823 N.E.2d 343, 348-49 (Mass. 2005) (alterations in original) (quoting Commonwealth v. Cast, 556 N.E.2d 69, 73 (Mass. 1990)).

[59]Although they dispute what Jacqueline Lugo actually said, the Parties agree that Ms. Lugo informed Plaintiff of the officers' presence at the building. See Pl.'s Statement of Disputed Facts ¶ 12; Defs.' Statement of Facts ¶ 36.

[60]See Vargas-Badillo v. Diaz-Torres, 114 F.3d 3, 6 (1st Cir. 1997); see also United States v. Holder, 990 F.2d 1327, 1329 (D.C. Cir. 1993) (finding that a defendant's proximity to drugs "openly on display" in an apartment supported a finding of probable cause).

11

respect to Plaintiff's § 1983 claim. The First Circuit has not decided whether "any person present" warrants are valid under the Fourth Amendment.[61] As such, Plaintiff cannot argue that federal law on the subject was clearly established. Plaintiff, however, urges this court to apply Massachusetts case law. Plaintiff notes that Massachusetts employs the prevailing view concerning "any person present" warrants.[62] The First Circuit, though, has held that officers need at least reasonable suspicion that an arrestee is concealing drugs on his person to conduct a strip search.[63] As a result, even if this court applies Massachusetts law regarding "any person present" search warrants, Plaintiff's claim still fails.

B.   City of Boston

   1. Custom of Illegal Searches

Plaintiff alleges that the City of Boston ("City") has an affirmative custom of executing illegal searches and strip searches.[64] Plaintiff contends that the City promotes a custom of "searching everyone present during the execution of all persons warrants, irrespective of whether there was sufficient probable cause for such searches."[65] In addition, Plaintiff insists that the City promotes a custom of strip searching individuals while executing such warrants, without having a

---

[61] Quiles v. Kilson, 337 F. Supp. 2d 224, 229 (D. Mass. 2004).

[62] Pl.'s Mot. for Summ. J. at 5 (citing Owens v. Lott, 372 F.3d 267, 275 (4th Cir. 2004)).

[63] Swain v. Spinney, 117 F.3d 1, 5-7 (1st Cir. 1997); see also Quiles 337 F. Supp. 2d at 230 (noting that the "constitutional prerequisite for a strip search when executing a search warrant . . . [is] 'reasonable suspicion' that the person is concealing drugs and/or weapons on their person").

[64] Pl.'s Cross-Mot. for Summ. J. at 3.

[65] Id. at 4.

clear policy regarding how strip searches outside the station are to be authorized or conducted.[66]

Under § 1983, a suit against a municipality cannot be based on a *respondeat superior* theory of liability.[67] Rather, "a plaintiff seeking to impose liability on a municipality under § 1983 . . . [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."[68] To be attributable to a municipality, a custom "must be so well-settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice."[69] The custom must be the "moving force behind the deprivation of constitutional rights."[70]

Even accepting Plaintiff's argument that Eddings' strip search violated his federal constitutional rights, Plaintiff has failed to produce sufficient evidence to raise a trialworthy issue that the City had a well-settled and widespread custom of conducting illegal searches and strip searches. To support the existence of this custom, Plaintiff points to Eddings' and Feeney's statements that they were trained to search everyone present when executing an "all persons warrant," regardless of whether they have information connecting the individual to drug activity.[71] This information, however, does not show that the City promotes a custom of conducting searches that are not supported by probable cause. Plaintiff does not present evidence that the

---

[66]Id. at 4-5.

[67]City of Canton v. Harris, 489 U.S. 378, 385 (1989).

[68]Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997).

[69]Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989).

[70]Id.

[71]Pl.'s Statement of Disputed Facts ¶¶ 24-25.

underlying "any person present" warrants in other situations were constitutionally deficient. As a result, Eddings' and Feeney's statements simply indicate that they have been trained to execute searches in the manner authorized by the warrant.

Plaintiff also notes that Boston Police Officer Kenneth Hearns, who participated in the search of the Apartment, indicated that he had conducted non-custodial strip searches on multiple occasions. In particular, Plaintiff states that Officer Hearns conducted a strip search of an individual for drugs, at the direction of Feeney, in an alley during the day.[72] This information does not show that the City has a widespread custom of conducting illegal strip searches. Instead, it shows that officers have conducted non-custodial strip searches and that one of these searches was, perhaps, unconstitutional.

Furthermore, the City's official strip search policy requires an officer to have probable cause that an individual is concealing drugs on his person before conducting a strip search. The City's policy reads, "When an officer has a Probable Cause that an arrestee has such contraband and/or weapon(s) in his or her possession and when a 'pat search' is inconclusive and/or is an impractical method of searching for such contraband and/or weapon(s), it may be necessary for officers to conduct a **'strip search**.'"[73] The policy indicates that the Duty Supervisor must determine whether a strip search "should be conducted during the booking process."[74] The Duty Supervisor must also ensure that the strip search is performed by an officer of the same gender,

---

[72]Pl.'s Cross-Mot. for Summ. J. at 5.

[73]Defs.' Statement of Facts Ex. H ("Strip Search and Body Cavity Procedures") at 1 (emphasis in original).

[74]Id.

14

conducted in an area of complete privacy, and recorded on the incident report.[75] A strip search may be conducted outside of the station if it is authorized by a warrant, and the supervising officer ensures that all the proper procedures are followed.[76]

Plaintiff does not argue that the City's strip search policy is unconstitutional. Plaintiff contends that the City promotes a custom of illegal strip searches because its policy is ambiguous regarding how non-custodial strip searches must be authorized and conducted.[77] While it can be argued that the City's strip search policy is ambiguous concerning whether a warrant must expressly authorize a strip search, it cannot be said that the City promoted a custom of *unconstitutional* strip searches.[78]

2. Failure to Train

Plaintiff argues that the City failed to adequately supervise and train its officers in the proper search and strip search procedures.[79] "The liability criteria for 'failure to train' claims are exceptionally stringent."[80] "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."[81] To establish the City's deliberate indifference,

---

[75]Id. at 2.

[76]Id.

[77]Pl.'s Cross-Mot. for Summ. J. at 5.

[78]See Swain v. Spinney, 117 F.3d 1, 5-7 (1st Cir. 1997); Quiles v. Kilson, 337 F. Supp. 2d 224, 230 (D. Mass. 2004).

[79]Pl.'s Cross-Mot. for Summ. J. at 6-7.

[80]Hayden v. Grayson, 134 F.3d 449, 456 (1st Cir. 1998).

[81]City of Canton v. Harris, 489 U.S. 378, 388 (1989).

Plaintiff must "present evidence that (1) the [City] knew when it hired" Eddings and Feeney that the risk of Fourth Amendment violations "arising and recurring" in the execution of search warrants was "'so obvious' that its failure to train [them] therein likely would result in continued violations; *or* (2) even though the initial risk of recurring constitutional violations was not 'so obvious,' the [City] subsequently learned of a serious recurrence, yet took no action to provide the necessary training."[82]  The failure to train also must be the "moving force behind the constitutional violation."[83]

Plaintiff contends that the risk of officers conducting unconstitutional searches and strip searches was "so obvious" that the City's failure to train was the moving force behind the violation of Plaintiff's rights.[84]  This court disagrees.  Plaintiff fails to present evidence that when Eddings and Feeney were hired there was a need for increased training in proper search and strip search techniques.  Additionally, Plaintiff does not present evidence of a serious recurrence that required the City to provide its officers with increased training.

Plaintiff also has not presented sufficient evidence to show that the City's alleged failure to train was the moving force behind the constitutional violation.  Plaintiff highlights that Eddings testified that an "any person present" warrant gives officers the authority to strip search anyone present at the execution of the warrant.[85]  While Eddings did adopt this statement, he clarified,

---

[82]See Hayden, 134 F.3d at 456 (citing City of Canton, 489 U.S. at 390 & n.10).

[83]Bordanaro v. McLeod, 871 F.2d 1151, 1162 (1st Cir. 1989).

[84]Pl.'s Cross-Mot. for Summ. J. at 6-7.

[85]Pl.'s Statement of Disputed Facts ¶ 27 (citing Ex. A ("Eddings' Oct. 26, 2004 Dep.") at 26:6-14).

"All persons present. Let's put it that way. You can search them, and if you have reasons to believe that you need to strip-search them, you can strip-search them."[86] In addition, Eddings testified that he believed probable cause existed that Plaintiff "had secreted drugs on his person."[87] Moreover, Feeney testified that when executing an "any person present" warrant, if an "officer feels that [individuals] may be concealing something else on them that [the officers] can't detect through going through their pockets, then a strip search will be done."[88] And like Eddings, Feeney thought there was probable cause that Plaintiff was concealing drugs on his person.[89] As such, Plaintiff has not raised a trialworthy issue that Eddings' strip search of Plaintiff was the result of the City's alleged failure to train, rather than an error in judgment.[90]

    3. <u>Failure to Investigate</u>

Plaintiff argues that the City has a custom of deliberate indifference to the rights of citizens based on its failure to adequately supervise the officers and investigate the incident. Plaintiff contends that the City tried to "gloss over" the incident because Feeney's failure to ensure that the strip search was documented was the only part of Plaintiff's complaint that the Boston Police Department's Internal Affairs Division sustained.[91] Yet based on the City's strip search

---

[86] Eddings' Oct. 26, 2004 Dep. at 26:16-19.

[87] See id. at 30:9-12.

[88] Pl.'s Statement of Disputed Facts Ex. B ("Feeney's Jan. 10, 2005 Dep.") at 34:9-18.

[89] Id. at 36:16-37:2.

[90] See City of Canton v. Harris, 489 U.S. 378, 391 (1989) (noting that a plaintiff cannot prevail by showing "that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct").

[91] Pl.'s Cross-Mot. for Summ. J. at 8-9.

procedures and the undisputed facts of this case, the Internal Affairs Division's finding was not unreasonable. Eddings conducted a strip search of Plaintiff pursuant to a warrant. Both Eddings and Feeney believed that there was probable cause that Plaintiff was concealing drugs on his person. And Eddings, an officer of the same gender as Plaintiff, conducted the strip search in an area of complete privacy.

Plaintiff also indicates that the City failed to sustain any aspect of another person's complaint concerning a strip search that was executed in a public place and without a warrant. Plaintiff notes that this search was also performed under Feeney's supervision.[92] Without more than an alleged single incident of misconduct, however, Plaintiff's claim cannot survive summary judgment.[93]

## Conclusion

For the foregoing reasons, Defendant Eddings' and Defendant Feeney's motion for summary judgment is ALLOWED as to Plaintiff's claims relating to the strip search, the City of Boston's motion for summary judgment is ALLOWED, and Plaintiff's motions for summary judgment on the same claims are DENIED.

AN ORDER WILL ISSUE.

   /s/ Joseph L. Tauro
United States District Judge

---

[92] Id. at 9-10.

[93] See Bordanaro v. McLeod, 871 F.2d 1151, 1161 n.8 (1st Cir. 1989).