UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.   04 CV 10746 JLT

| |
|---|
| IVAN SANTIAGO,<br>          Plaintiff<br><br>v.<br><br>MARCUS EDDINGS<br>          Defendants |

**DEFENDANTS' MOTION IN LIMINE TO EXCLUDE  IRRELEVANT, REMOTE, AND UNFAIRLY PREJUDICIAL DOCUMENTARY EVIDENCE REGARDING UNIDENTIFIED GLOVES EXAMINED BY THE BOSTON POLICE DEPARTMENT**

The Defendant, Marcus Eddings ("Defendant"), respectfully requests that this Court exclude Exhibits E, F and G as well as any reference, comments and/or argument regarding the Boston Police Department's ("BPD's" ) examination of an unidentified pair of gloves received by the BPD approximately two months after the alleged March 20, 2003 incident because such irrelevant, remote and prejudicial evidence will not only confuse and mislead the jury, but also cause them to speculate about matters not in evidence. Strikingly, no evidence has been adduced at trial linking these particular gloves to the Defendant, Marcus Eddings.  Accordingly, Defendant Eddings requests that this evidence be excluded from the trial of this matter - including, during the Plaintiff's closing statements.

I.      **ADMISSION OF ANY DOCUMENTS RELATING TO THE GLOVES IS NOT RELEVANT TO THE NARROW ISSUE IN THIS CASE AND ANY SLIGHT PROBATIVE VALUE IS OUTWEIGHED BY UNFAIR PREJUDICE TO THE DEFENDANT, SERGEANT MARCUS EDDINGS.**

   A.     **Any Evidence Relating To The Gloves Is Remote, Speculative And Irrelevant Because There Is An Absence of Evidence Linking These Particular Gloves To The Alleged March 20, 2003 Incident.**

The Defendant, Marcus Eddings, hereby moves this Honorable court to exclude three of the Plaintiff's documentary exhibits, including: 1) Exhibit E, a Boston Police Department Custody Receipt document, dated May 7, 2003; 2) Exhibit F, the Affidavit of Ioan Truta; and 3) Exhibit G, Boston Police Laboratory Examination Report, dated October 21, 2003.[1]  The sole issue in this case is whether, as the Plaintiff has alleged, Defendant Eddings inserted his finger into the Plaintiff's anal cavity and thereby violated his civil rights.  Plaintiff, however, seeks to obscure this issue by introducing irrelevant and collateral evidence contained in three documents relating to an unidentified pair of gloves possibly containing <u>possible</u> traces of fecal matter received by the Boston Police Department almost two months after the alleged incident.  The jury has neither heard nor received any evidence whatsoever linking these gloves to the Defendant.  Additionally, the jury has neither heard nor received any evidence linking the gloves described in Exhibits E, F and G with the alleged incident.

During cross-examination by Defendant's counsel, when Plaintiff was asked whether the gloves used in the incident were thrown away, Plaintiff responded affirmatively, "Yes."  In fact, all of the evidence adduced at trial has established that the gloves used by Boston Police officers on the day of the incident were thrown away and the Plaintiff has adduced no evidence to the contrary.  Moreover, the Defendant testified that he threw his gloves away while at the apartment on the day of the incident.  In addition, other officers testified that their gloves were discarded at the apartment.  No evidence has been adduced regarding the recovery of any gloves from the Plaintiff's

---

[1] Only because this Court indicated during a previous ruling that it would admit Plaintiff's Exhibits E and F over the Defendant's objection, the Defendant sought to admit Exhibit G in order to provide a more complete picture of the evidence regarding Exhibits E and F.  At this juncture, Defendant seeks to exclude all three exhibits.

apartment nor has the jury heard any testimony about the delivery of any such gloves to the BPD.[2]

As the proponent of such evidence, Plaintiff has failed to establish the relevancy and requisite foundation for such evidence. As the evidence now stands, the jury has not heard any testimony whatsoever about (1) any gloves being brought to the BPD at all, (2) whose gloves these were, (3) where these gloves were found, (4) who found these gloves, (5) when these gloves were found, (6) what these gloves looked like, (7) whether they looked similarly to the gloves worn by Sergeant Eddings on March 20, 2003, and (8) why these gloves were examined by the BPD. Moreover, the Plaintiff has adduced no evidence establishing the possibility of any fecal matter being present on such gloves. Without anything more, this evidence is "too remote to be considered anything more than conjecture" and is inadmissible. Computer Identics Corp. v. Southern Pacific Co., 756 F.2d 200, 206 (1st Cir. 1985). All this evidence does is raise improper suspicion, which the First Circuit has held insufficient to sustain admission. See Carey v. New England Organ Bank, 446 Mass. 270, 283-284 (2006) ("Evidence which merely raises a suspicion, or a surmise, or a conjecture, is not enough….").

On this point, the Supreme Judicial Court's decision in Commonwealth v. Chassen, 383 Mass. 183 (1981) is rather illustrative. In that case, the defendant argued that it was reversible error to exclude from evidence two knives found near the murder scene two and a half weeks after the fatal stabbing. Id. at 187. Despite testing

---

[2] This stands in stark contrast to the evidence the Plaintiff's attorney, Stephen Hrones, and witness, Jacqueline Lugo, adduced during the Internal Affairs ("IA") investigation. Strikingly, during Lugo's IA testimony, she stated that while she threw away all the gloves from the March 20, 2003 incident, she did find a pair of gloves in her dirty laundry almost two months following the incident and was submitting them to IA for examination. See Exhibit A, attached hereto. The Plaintiff, however, has adduced no such evidence at trial.

3

confirming that one of these knives had traces of either human or animal blood, the court excluded the evidence as inadmissible because in the absence of evidence linking them to the crime, the evidence was deemed too remote. Id. at 186-187.  The Court reasoned that the defendant "offered no evidence linking the particular knives to the stabbing incident other than their presence in the park two and a half weeks and a month and a half, respectively, after the stabbings," and concluded "that this lack of linking evidence, together with what was in the circumstances a significant passage of time, provided sufficient grounds for the judge in his discretion to exclude them as lacking probative value." Id.

Similarly here, the lack of linking evidence between the particular gloves received by the BPD and the gloves used during the March 20, 2003 incident, combined with the significant passage of time warrants exclusion of any documentary evidence relating to these gloves. Moreover, here, unlike Chasson, there is no evidence establishing that the gloves were in fact found at the scene of the alleged incident.  No evidence been adduced establishing that the gloves received by the BPD originated from the Plaintiff's residence at Apartment #5 at 58 Cheney Street. While Exhibit E's Custody Receipt document references the "location," as the entire fifteen suite building of "58 Cheney Street," this reference is ambiguous and does not clarify in any way that this "location" is where the gloves were found.  In fact, no evidence has even been adduced as to what exactly is a "Custody Receipt" document.  Furthermore, the period of time that elapsed between the alleged incident and the time these gloves were received by BPD was not a mere two and half weeks as in Chasson, but almost two months.

    **B.  <u>Admission Of The Three Boston Police Department Documents Is
Also Prohibited Because Admission Of Such Evidence Will Unfairly
Prejudice The Defendant, Will  Mislead  The Jury And Cause
The Jury To Speculate About Matters Not In Evidence.</u>**

       **1. <u>The Jury Will Speculate About Unanswered Questions Regarding The
Gloves, Unfairly Prejudicial Matters Regarding Possible Fecal Matter
And The BPD's Internal Affairs Investigation Of The Alleged Incident.</u>**

In addition to their irrelevance, these documents relating to the BPD's receipt and examination of a pair of unidentified gloves is nonetheless inadmissible because any slight probative value of admitting such evidence, which the Defendant denies, is substantially outweighed by the danger of unfair prejudice to the Defendant. <u>See</u> Fed. R. Evid. 403, 404(b) and 806(b). As discussed <u>supra</u>, "the speculative nature [of this evidence] is only the start of the problem." <u>DiBenedetto v. Hall</u>, 272 F.3d 1, 9 (1st Cir. 2001).  The numerous unanswered questions surrounding admission of these unidentified pair of gloves will very likely confuse the issues and mislead the jury on an improper collateral issue, a detour particularly inappropriate here where the crux of the case hinges on the jury's credibility determination between the Plaintiff and the Defendant.  Jury confusion will also be compounded by the documents' references to terms such as feces, rape, and sexual assault, all terms which have been either excluded from trial or lack any foundation evidentiary foundation.  For the jury to read such terms of rape and sexual assault referenced on the Exhibits would not only be in violation of this Court's ruling on Defendant's motion in limine regarding such terms, but would also be highly and unfairly prejudicial to the Defendant. <u>U.S. v. Sánchez-Berríos</u>, 424 F.3d 65, 74 (1st Cir. 2005) (recognizing that mischaracterization or overuse of a potentially inflammatory phrase may be deemed prejudicial).  Additionally, the documents' reference to the Internal Affairs investigation of this incident will also be unfairly prejudicial to the Defendant.

5

This Court has already ruled such references inadmissible.  See Document 57.  Instead of addressing the central issue in this case, the jury will be misled and invited to speculate on virtually every aspect of these unidentified pair of gloves and alleged fecal matter--- evidence of which has not been adduced at trial.

### 2. Admission Of This Documentary Evidence Will Invite The Jury To Speculate About Matters Requiring Expert Explanation.

Admission of this evidence will invite the jury to speculate on matters which require the admission of expert testimony. The exhibits discuss matters, such as "latent prints" and laboratory examination of possible fecal matter, topics which require an expert's explanation.  See United States v. Mahone,  453 F.3d 68, *72 (1st Cir. 2006) (discussing latent print evidence as expert testimony and recognizing that  "[L]atent print identification is the very archetype of reliable expert testimony."); see also United States v. Garcia, 452 F.3d 36, 42 (1st Cir. 2006).  Certainly, the Plaintiff had the opportunity to designate and call an expert regarding such evidence, but failed to do so.  He should not now, in the midst of trial, be allowed to circumvent evidentiary rules regarding experts and expert disclosures by introducing unauthenticated hearsay documents from the BPD.

### 3. Admission of These Gloves Also Causes The Defendant Unfair Prejudice Because Plaintiff Failed to Disclose Such Documentary Prior To Trial As He Was Required To Do Under Local Rule 43.2(B)(3).

Plaintiff failed to comply with Local Rule 43.2 (B)(3), which requires that "Except for good cause shown, no party shall be allowed to: "(b) introduce documentary evidence, during direct examination, other than those exhibits already listed with the judicial officer and furnished to the other parties before trial commences." Local Rule 43.1(B)(3)(b). Nowhere in the Plaintiff's Pretrial Memorandum are Plaintiff's documentary exhibits regarding these gloves identified.  In fact, nowhere in Plaintiff's

Pretrial Memorandum is the word "gloves" even mentioned. Moreover, at no point did Plaintiff establish the requisite "good cause" for such failure to disclose. This greatly prejudiced the Defendant because the Defendant was given unreasonable and insufficient notice that the Plaintiff sought to admit any evidence regarding any gloves during trial. Had Defendant been aware of such exhibits prior to trial, the Defendant would have prepared its defense differently, including calling witnesses to explain the BPD documents. Plaintiff, however, sought to surprise the Defendant, seek an upper hand, and admit such documents in the midst of trial.

II. **PLAINTIFF HAS FAILED TO AUTHENTICATE AND ESTABLISH THE PROPER EVIDENTIARY FOUNDATION FOR ADMISSION OF EXHIBITS E, F AND G.**

Each of these three exhibits from the BPD[3] constitute inadmissible hearsay because they are out-of-court statements offered by the Plaintiff for the truth of the matter asserted. No hearsay exception applies. As the proponent of such evidence and the catalyst for the creation of such police documents, Plaintiff cannot admit such documents under the business records exception. See United States v. Smith, 521 F.2d 957, 965, 967 (D.C.Cir.1975) (after conducting an extensive analysis, establishing rule that police reports are normally excluded when offered by the party at whose request or on whose behalf they were made, except " when offered by a criminal defendant to support his defense"). Additionally, Plaintiff has produced no live witness to satisfy the requirements of the business records exception.

---

[3] The BPD is not a party to this case.

**IV.    CONCLUSION**

For the foregoing reasons and any others stated orally to the Court, therefore, the Defendant requests that this Court grant its motion in limine to exclude Exhibits E, F and G.

                Respectfully submitted,
                DEFENDANT MARCUS EDDINGS
                By his attorneys:

                /s/ Helen G. Litsas
                Thomas Donohue, BBO #643483
                Helen G. Litsas, BBO# 644848
                Assistant Corporation Counsel
                City of Boston Law Department
                Room 615, City Hall
                Boston, MA 02201
                (617) 635-4039 (Donohue)
                (617) 635-4023 (Litsas)

Dated: November 12, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that this document was filed through the ECF system and therefore will be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 12, 2006.

                /s/ Helen Litsas
                Helen Litsas